OPINION OF THE COURT
Jasen, J.
Defendant stood convicted of attempted burglary in the third degree (Penal Law, §§ 110.00, 140.20) and attempted petit larceny (Penal Law, §§ 110.00, 155.25) following a non-jury trial in Supreme Court.[1] On appeal, a divided Appellate Division reversed, on the law, the judgment of conviction and dismissed the indictment, holding that "[t]he guilt of the defendant was not established beyond a reasonable doubt.” Our inquiry is limited to the issue whether the People have *378 adequately shouldered the burden of demonstrating defendant’s guilt.
Deprived of electrical power, New York City was cast beneath a shroud of blackness on July 13, 1977. In what might be deemed a shopkeeper’s nightmare, the city lay bare during the blackout to those who would exploit this unfortunate circumstance for their own personal gain. While such a situation may be said to create an unexpected windfall for the criminal element, it is, without doubt, equally conducive to unfounded accusations of criminal conduct, for it would readily appear that innocent persons out in the night could be the victim of unfortunate circumstance. With these thoughts, we turn to the facts of this case as developed at trial.
Three New York City police officers testified for the prosecution. It appears that by virtue of information received by an unidentified passerby, the officers converged on the premises of the Friendly Frost Appliance Store located at 386 Bridge Street in Brooklyn at approximately 12:30 a.m. on July 14, 1977. They arrived only to find the metal security gate viciously torn from the storefront and the front plate glass window, once lodged in a ledge approximately two feet in height, completely shattered.
Armed with flashlights, Officers George Meyer and John McCarthy entered the store by stepping over the glass-covered ledge, while Officer Thomas Duffy guarded the storefront. The officers stated that the shop’s interior was in total disarray; televisions, air conditioners and other electrical appliances were overturned in the aisle and the display shelves contained perceptible vacant spots. The parties stipulated, however, that when the store was closed after the prior working day, it was in a "fine condition”.
Officer Meyer testified that he walked to the rear portion of the store, and, while there, heard a noise emanating from the store’s office. Shining the beam from his flashlight at the source of the disturbance, Officer Meyer saw defendant, in a crouched position, behind a table or desk. Defendant was ordered to stand up, and was subsequently handcuffed, searched and led from the store. All three officers made in-court identifications of defendant as one of the persons discovered in the appliance store; however, none of the prosecution witnesses could testify that they saw defendant in actual possession of any of the store’s merchandise.
After the prosecution rested, defendant took the stand in his *379 own defense and flatly denied being present at the Friendly Frost Appliance Store on July 14, 1977. Defendant testified, in essence, that he was standing peaceably at a different location awaiting the arrival of a bus to take him home. At that time, three officers — different from those who testified for the prosecution — confronted defendant and, although defendant stated that he was going home, arrested him. No other witnesses appeared for the defense.
The trial court, after hearing the testimony, found defendant’s story "totally devoid of credibility” and ultimately found defendant guilty of attempted burglary in the third degree and attempted petit larceny in the third degree. On appeal, the Appellate Division reversed, finding that the prosecution had not met its burden of establishing defendant’s guilt beyond a reasonable doubt. The People were granted leave to appeal to this court by permission of the Presiding Justice at the Appellate Division. We now reverse.
Defendant’s sole contention in urging reversal of his conviction, obviously accepted by the majority below, is that the People failed to establish beyond a reasonable doubt that he acted with the requisite intent to commit the crimes of which he was found guilty.[2] Inasmuch as defendant was convicted of attempted burglary in the third degree and attempted petit larceny, it was incumbent upon the People to prove that defendant harbored an intent "to commit a crime” while unlawfully in the building (Penal Law, §§ 110.00, 140.20) and that he intended to steal property (Penal Law, §§ 110.00, 155.25).[3] Our review of the record leads us to the conclusion that the People satisfied this burden.
 At the outset, we reject defendant’s contention that the sufficiency of the evidence pertaining to the element of intent must be measured by the so-called "moral certainty” standard. While it is the oft-quoted rule in criminal cases *380 which depend entirely upon circumstantial evidence that "’the facts from which the inference of the defendant’s guilt is drawn must be established with certainty — they must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis’” (People v Cleague, 22 NY2d 363, 365-366, quoting People v Bearden, 290 NY 478; 480), this legal standard does not apply to a situation where, as here, both direct and circumstantial evidence are employed to demonstrate a defendant’s culpability. (See, e.g., People v Licitra, 47 NY2d 554, 558-559; People v Castillo, 47 NY2d 270, 277-278; People v Kennedy, 47 NY2d 196, 201-203; Richardson, Evidence [10th ed], § 148, p 119.) In this case, the prosecution established that defendant was in the store during a time of widespread looting in the course of the blackout by direct evidence — the eyewitness testimony of the arresting officers. Hence, the prosecution’s case did not rest entirely upon circumstantial evidence and the "moral certainty” standard simply does not apply.
Perhaps defendant seeks to invoke the "moral certainty” standard under the assumption that it imposes upon the People a greater burden of proof than the traditional "beyond a reasonable doubt” formulation. We deem it necessary to dispel this misconception.
When a case rests entirely upon circumstantial evidence, the finder of fact is required to perform a complex analytical function. No longer is the issue of credibility the determining factor as it often times is in prosecutions based upon direct evidence. Rather, the prosecution places before the jury or Judge pieces of a puzzle which must be fit together before the fact finder can arrive at its determination. By stating that the facts perceived as a whole must exclude "to a moral certainty” every conclusion other than guilt, the law addresses how the pieces of the puzzle can be fit together, what inferences may be drawn from individual bits of evidence, and what gaps in the puzzle may be filled by permissible inferences. The phrase "to a moral certainty” merely draws attention to the rigorous function which must be undertaken by the finder of fact when presented with a case of purely circumstantial evidence; it does not address an inherent weakness in circumstantial evidence itself, for often such evidence is more reliable than direct, nor does it alter the ultimate burden of proof which must be borne by the People. In short, the phrase "to a moral certainty” is a description of the standard to be *381 applied by the fact finder when, in the more complex and problematical reasoning process necessarily undertaken in cases of purely circumstantial evidence, it makes the ultimate determination whether defendant’s guilt has been proven beyond a reasonable doubt. (See People v Kennedy, 47 NY2d 196, 201-203, supra.)
Turning to the issue whether the People established defendant’s guilt beyond a reasonable doubt, we think it abundantly clear that such burden was met. The Trial Judge expressly credited the prosecution witnesses’ testimony and, thus, their recitation of the events which occurred on July 14, 1977 must be accepted by this court for purposes of analysis. Of course, the element of intent is rarely satisfied by an explicit expression of culpability by the perpetrator; rather, "in deciding whether the People met their burden, we are required to say whether, considering the facts proved and the inferences that could reasonably be drawn therefrom, [the fact finder] could conclude that there was no reasonable doubt that the defendant” intended to commit the crimes charged. (People v Castillo, 47 NY2d 270, 277, supra; see People v Bracey, 41 NY2d 296, 301.)
Here, defendant was discovered crouched behind a table or desk in the middle of the night in a store which obviously was the target of widespread looting. The security gate was torn from the front of the establishment, and the windows were smashed leaving pieces of shattered glass about the entry to the premises. Further, access to the store could not be accomplished by wandering in from the street; rather, it appears that entry could only be gained by straddling a two-foot ledge strewn with jagged glass.
Under these circumstances, the proof permitted the inference to be drawn that defendant’s entry into the premises was effectuated with the intent to commit a larceny therein. (See People v Mackey, 49 NY2d 274, 280, supra.) Competing inferences to be drawn, if not unreasonable, are within the exclusive domain of the finders of fact, not to be disturbed by this court. Certainly, the Trial Judge could conclude, after considering the surrounding circumstances, that there was no reasonable doubt that defendant intended to steal property from the store.
Accordingly, the order of the Appellate Division should be reversed and the case remitted to that court for determination *382 of the facts. (CPL 470.40, subd 2, par [b]; CPL 470.25, subd 2, par [d].)
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.

. Although after trial the court found defendant guilty of the crime of burglary in the third degree, the court, at sentencing, withdrew this portion of the verdict and determined defendant to be guilty only of attempted burglary in the third degree.

. The parties stipulated that if the fact finder determined that defendant was in the store, it should be found that he had neither permission nor authority to be present therein.

. We would note that it is not necessary for the People in a burglary prosecution to demonstrate the exact crime which defendant intended to commit while unlawfully in the building. (People v Mackey, 49 NY2d 274, 278-281.) However, the prosecution in this case expressly limited its theory to one of larceny, and, having done so, this court is obliged to hold the prosecution to this narrower theory alone. Hence, to sustain defendant’s conviction of both crimes, we must find that the People proved beyond a reasonable doubt that defendant was present in the store with the intent to appropriate property.