Bellacosa, J.
(concurring in Grega and dissenting in Roberts). While I fully concur in Judge Kaye’s opinion to reinstate defendant Grega’s conviction, I must respectfully dissent from the majority affirmance of the vacatur of defendant Roberts’ conviction. I would reinstate his conviction, too.
The majority analysis essentially concludes that there was a prejudicial change in the prosecution theory from the indictment (striking the victim to death) to the proof at trial (strangling her to death). I disagree because Grega and Roberts, in my view, are decided inconsistently, not only when analyzed inter sese but especially when carefully evaluated under our governing line of precedents.
Up to now, our cases have neatly and fairly delineated a legally significant demarcation between changes of prosecution theory pertaining to the material elements of a crime as opposed to those which are characterized as factual facets of the criminal event. The result and rationale in Roberts blurs the sound and useful precedential differentiation.
The indictment at issue charged manslaughter in the first degree in that: "The defendant, PAUL RAY ROBERTS, in the afternoon hours of July 28, 1985, in the counties of Orange *501 and/or Rockland and/or Westchester and/or Sullivan, State of New York, did knowingly, unlawfully and with intent to cause serious physical injury to another person, caused [sic] the death of such person, to wit: the defendant, PAUL RAY ROBERTS, while operating a taxi for W & M Taxi Service, did transport one BLANCHE MIRONOV from the Aladdin Hotel, Woodbourne, Sullivan County, New York, to a location in the vicinity of Mt. Vernon, Westchester County, New York, and that during the course of the trip, the defendant, with intent to cause serious physical injury, did strike BLANCHE MIRO-NOV in the neck area causing her death”.
Before trial, defendant Roberts’ counsel received the autopsy report showing a cause of death, "Asphyxia by Traumatic compression of Neck”, consistent with strangulation. Following the opening statements at trial, Roberts’ counsel conceded further knowledge of the evidence of death by strangulation derived from the Assistant District Attorney at a pretrial discovery conference. Despite this foreknowledge, defense counsel never requested a bill of particulars, but waited until the trial to argue the People should be precluded from presenting such evidence. The People retorted that they should be permitted to introduce such evidence because strangulation and striking are merely the mechanisms of death, not elements of the crime charged. The Trial Judge admitted the evidence of death by strangulation.
The traditional functions of the indictment instrument are to provide "the defendant with fair notice of the accusations made against him, so that he will be able to prepare a defense”; to "provide some means of ensuring that the crime for which the defendant is brought to trial is in fact one for which he was indicted”; and to serve as an indication of "just what crime or crimes defendant has been tried for, in order to avoid subsequent attempts to retry him for the same crime or crimes” (People v Iannone, 45 NY2d 589, 594, 595). However, these goals need not be secured only by resort to the four corners of an indictment, for to so hold would "encrust them with an aura of inflexible invulnerability” (id.). The majority beclouds the guiding clarity of Iannone by adding a new and seemingly overruling facet: "though not an element of the crime, a description of the conduct that resulted in the victim’s death cannot be said, under CPL 200.50 (7) (a), to be extraneous to the material elements of the crime” (majority opn, at 498). Moreover, it states the factual allegations are discoverable by bill of particulars. While this is absolutely *502 true, defendant deliberately chose not to demand a bill of particulars in the face of advance knowledge of the strangulation evidence given to him by the prosecution.
Under CPL 200.50 (7), an indictment need only provide "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, (a) asserts facts supporting every element of the offense charged and the defendant’s or defendants’ commission thereof with sufficient precision to clearly apprise the defendant or defendants of the conduct which is the subject of the accusation”. Consequently, "[n]ot every fact mentioned in an indictment is essential to establish the defendant’s guilt of the crime charged, and thus it is not necessary in every case that the People prove all acts alleged in the indictment when the remaining acts alleged are sufficient to sustain a conviction” (People v Rooney, 57 NY2d 822, 823).
The majority departs in Roberts from the well-settled rule that an allegation contained in an indictment, which is not a material element of the crime charged, need not be proved and that a conviction based on facts at variance with such immaterial evidentiary allegations should not be overturned. Most directly apt in this regard, People v Spann (56 NY2d 469) compels reinstatement of Roberts’ conviction unless we have decided also to overrule the Spann analysis. In that case, the defendant was indicted for robbery in the third degree in that he forcibly stole "jewelry and lawful money.” At trial he testified that he in fact robbed only drugs. We upheld his conviction, finding that the indictment provided fair notice and that his conviction did not constitute an impermissible amendment of the indictment. The court reasoned that the defendant had notice that he was accused of forcibly stealing property from a particular victim on a given date and was otherwise informed pretrial of the location and the time of the robbery. Further, "[t]he particular nature of the property stolen is not, by statute, a material element of the crime of robbery” (People v Spann, 56 NY2d 469, 473, supra [emphasis supplied]). The distinction advanced by the majority that in Spann the crime charged and proved was the same but in Roberts they were only "technically the same” is a classical distinction without a difference.
If surprise be the test, defendant Spann was surely more startled by the turn of events in his conviction than defendant Roberts could possibly be, as he had plenty of advance notice *503 as to what was to be expected as to the cause of death evidence and how he should defend against it. He chose to take a gamble and to hold what he hoped would turn out to be a trump card if he did not succeed in getting an acquittal before the jury. Having been fairly convicted, he should not now win on appeal by this strategy.
As Judge Cardozo so aptly stated in People v Schmidt (216 NY 324, 328-329, 340-342), even while affirming a capital conviction of a defendant who gambled with a feigned defense of mental disease and defect, where there was clear error in the instruction to the jury, "[t]he remedy and the one remedy available to a criminal who finds himself thus enmeshed in a trap of his own making, is not in the processes of courts or the machinery of law; it is by appeal to the clemency of the Governor” (id., at 329). "The law does not force its ministers of justice to abet a criminal project to set the law at naught” (id., at 341).
In People v Feldman (50 NY2d 500, 504), we upheld a conviction despite the fact that the indictment charged the sale of drugs to a different person from the one proven at trial, since "the corpus delicti of the crime charged was the transfer of a controlled substance * * * the person to whom that substance was transferred was immaterial”. Similarly, People v Charles teaches that where the wording of the indictment required proof of more than was required under the statute, the People were not bound and satisfaction of only the statutory elements did not constitute a change in the theory of prosecution (61 NY2d 321, 327-329; see also, People v Cunningham, 48 NY2d 938, 940; People v La Marca, 3 NY2d 452, 458-459 [where the date of the crime is not an element, proof "that the offense was committed at any time prior to the commencement of the prosecution * * * does not constitute a material variance” (emphasis supplied)]).
The "material element” line of cases is best illustrated by the contrasting resolution of People v Kaminski (58 NY2d 886), where we reversed a sodomy conviction based upon a change in the theory of prosecution because the indictment alleged forcible compulsion by physical force, but the trial court charged in the alternative that forcible compulsion could be shown on a threats basis and the latter theory was supported by the evidence (compare also, People v Grega, [decided today]; see also, People v Barnes, 50 NY2d 375, 379, n 3). In Kaminski, forcible compulsion was a material element *504 of the sodomy offenses; on the other hand, in Spann and cases of its genre, the pivot upholding the convictions centered on a change only of an evidentiary aspect. Roberts squares with the latter line.
The indictment in Roberts charged manslaughter in the first degree in that on the afternoon of a specified date, in one of four specified counties, along a particular route, Roberts did "knowingly, unlawfully and with intent to cause serious physical injury to another person, caused [sic] the death of’ Blanche Mironov. The very specific and unnecessary evidentiary allegations also added that the mechanism of death was a strike to the neck of the victim. The People proved every material element of the indictment along with all of the surplus evidentiary allegations, with the sole exception of the addition or substitution of strangulation as the mechanism of death. There can be no dispute that the crime charged is manslaughter in the first degree — whether by striking or strangulation or both, with intent to cause serious physical injury — not murder as the majority characterizes it. Manslaughter in the first degree was also the crime upon which Roberts was tried. Nor can it be denied that he had fair advance notice of the material elements of that crime. Similarly, he cannot validly claim surprise or unfairness in this respect, as his counsel was informed pretrial and given official documentary proof that the mechanism of death may have been strangulation. Insofar as the mechanism of death is an indictment allegation of an evidentiary nature and not a material element of the crime charged, manslaughter in the first degree, it did not have to be proven in that precise form to sustain this conviction.
In sum, my disagreement with the majority in the Roberts case rests on these firm pillars:
(1) the People v Spann (56 NY2d 469, supra) and People v Iannone (45 NY2d 589, supra) precedents which I believe are undermined by the Roberts majority holding;
(2) the material element versus evidentiary factor distinction, which has a well-settled legal and analytical validity but which is now blurred by the majority;
(3) the analysis and precedents applied in Grega which should produce a consistent result in Roberts decided simultaneously and ironically in a single opinion; and
(4) the unacceptability of encouraging strategic gamesmanship in criminal trials by defendants laying back with knowl *505 edge and benefiting from a candidly conceded drafting mistake by the District Attorney on behalf of the Grand Jury involving only an evidentiary aspect of the case.
Accordingly, fairness, precedents and sound analysis support my vote to reinstate the vacated convictions in both cases.
In People v Grega: Order modified and case remitted to the Appellate Division, Third Department, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur with Judge Kaye; Judge Bellacosa concurs in a separate opinion in which Chief Judge Wachtler also concurs.
In People v Roberts: Order affirmed.
Judges Simons, Alexander, Titone and Hancock, Jr., concur with Judge Kaye; Judge Bellacosa dissents and votes to reverse in a separate opinion in which Chief Judge Wachtler concurs.