Pablo MARTINEZ, Petitioner,

v.

Edward REYNOLDS, Superintendent,
Mohawk Correctional Facility,
Respondent,

No. 94–CV–4178 (JS).

United States District Court,
E.D. New York.

May 30, 1995.

Pablo Martinez, Rome, NY, pro se.

Roseann B. Mackechnie, & Keith Dolan, Asst. Dist. Attys., for Kings County, Brooklyn, NY, for respondent.

*MEMORANDUM AND ORDER*

SEYBERT, District Judge:

Pablo Martinez, proceeding *pro se,* petitions the Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Petitioner was convicted in 1990, after a jury trial, of one count of Criminal Possession of a Controlled Substance in the Second Degree (N.Y.Penal Law § 220.18[1] ), four counts of Criminal Possession of a Controlled Substance in the Third Degree (N.Y.Penal Law § 220.16[1] ), one count of Criminal Sale of a Controlled Substance in the Third Degree (N.Y.Penal Law § 220.39[1] ), and one count of Criminal Possession of a Controlled Substance in the Fourth Degree (N.Y.Penal Law § 220.09[1] ). The petitioner is presently serving seven concurrent sentences, the longest of which is from five and one-half years to life.

Petitioner asserts two distinct claims in his application for collateral relief. First, he argues that the trial record did not support a finding of his guilt beyond a reasonable doubt. Specifically, petitioner asserts that the prosecution failed to adduce sufficient evidence to prove that he exercised dominion or control over all the crack cocaine found in the grocery store/bodega at which he worked. Second, petitioner contends that he was denied a fair trial as a result of the trial court's refusal to give a circumstantial evidence charge to the jury.

The Court has carefully reviewed the briefs of the parties, as well as the record of the state court proceedings. For the reasons discussed herein, the petition is denied in its entirety.

## BACKGROUND

At petitioner's trial, held in May 1990, the prosecution introduced evidence to show that on November 28, 1989, petitioner sold four vials of crack-cocaine to an undercover police officer and had constructive possession over another 287 vials of crack-cocaine. On that day, petitioner was working at a small bodega/grocery store located at 148 Lewis Avenue in Brooklyn. (Tr. 5/21/90, at 306.) At approximately 6:40 p.m. that evening, an undercover police officer entered the vestibule of the bodega and observed a male Hispanic standing behind a cash register window wearing a gray and black plaid shirt, a turtle neck sweater, a gold chain, and a black cap with the words "Show Boat" written across it. (Tr. 5/17/90, at 164–65.) The area in which the man was standing was enclosed by three plexiglass walls separating him from the bodega's vestibule. (*Id.* at 164, 172.)

Upon entering the bodega's vestibule, the undercover officer observed two customers standing in front of the cash register window opening. (*Id.* at 166.) The officer saw each customer place money through the window opening and observed the man behind the plexiglass window reaching beneath the register counter to place clear plastic, purple-capped vials on the counter top. (*Id.* at 165, 204–05.) The undercover officer did not hear any conversation between the two customers and the bodega employee. Moreover, although the undercover officer did hear voices coming from within the bodega, he saw no one else.[1]

After the customers left the bodega, the undercover officer approached the window and handed over a marked twenty-dollar bill, without conversing with the bodega employee. The bodega employee then reached down beneath the counter and handed the undercover officer four clear plastic, purple-

---

1. These voices turned out to be three other man who were arrested but later released without being charged with any crime.

capped vials. (*Id.* at 167–169, 206)[2] The undercover officer took the vials and left.

The undercover officer proceeded to radio Detective Doyle and Sergeant Rhoden, members of the arresting team, to inform them that a purchase of narcotics had been made and to describe who had sold him the drugs. (*Id.* at 171; 228.) Detective Doyle and Sergeant Rhoden entered the bodega and observed the bodega employee bending down beneath the cash register counter, with his arms out of their view. (*Id.* at 86, 234.) Detective Doyle arrested the employee, searched his person and recovered $254 in small bills.[3]

Sergeant Rhoden and Detective Doyle conducted a search of the interior of the bodega and found four separate supplies of crack-cocaine vials. (*Id.* at 90–93, 244–247, 273.) Detective Doyle recovered fourteen vials of crack-cocaine, thirteen of which had purple caps and one of which had a green cap, from a brown paper bag stuffed into a box of soda straws on the cash register counter top. (*Id.* 90, 245.) Detective Doyle also found twelve vials of crack-cocaine, two of which had gold caps and ten of which had black caps, in a brown paper bag on the second shelf underneath the register counter. (*Id.* at 246, 267.) Sergeant Rhoden uncovered a third brown paper bag, which contained sixty-one purple-capped vials of crack-cocaine, placed between the radiator and the wall behind the register counter. (*Id.* at 90, 128–29, 246–247, 273.)

Detective Doyle then observed a rectangular plywood platform with an opening on which the bodega employee had been standing. (*Id.* 90, 247, 263, 270–272.) Upon lifting some loose planks in the plywood platform with his hands, Detective Doyle retrieved two plastic bags approximately eight to ten inches beneath the opening, each containing one hundred vials of crack-cocaine. One bag had only purple-capped vials and the other bag had a combination of blue-capped and purple-capped vials. (*Id.* at 247, 263.) That evening, the undercover officer identified petitioner as the bodega employee who had sold

him the four purple-capped crack-cocaine vials. (*Id.* at 96, 179.)

The petitioner testified on his own behalf at trial and denied ever selling the four vials of crack-cocaine to the undercover police officer. (Tr. 5/21/90, at 308.) Petitioner further testified that he had just begun his employment at the bodega on the day of his arrest, that he had not seen crack-cocaine in the bodega and that he had not participated in any sale of crack-cocaine to customers. (*Id.* at 307, 322, 324.) Moreover, petitioner asserted that another employee always assisted him at the counter.

Petitioner also claimed that there was no hole in the plywood platform on which he was standing at the time of his arrest. (*Id.* at 319.) He further insisted that even though he sold sodas to customers, he never gave straws to anyone, (*Id.* at 318), and that the reason he had so much cash on his person was that he had cashed his unemployment checks earlier that day. (*Id* at 321.) Additionally, petitioner testified that during his arrest, the bodega's plexiglass door was not rammed by the police but opened by him, (*Id.* at 322), and that he had not been behind the counter bending down at the time the police entered the bodega. (*Id.* at 323.) Petitioner acknowledged, however, that at the time he was arrested, he was wearing the items described by the undercover officer.

Petitioner was convicted on May 23, 1990 and was sentenced to concurrent terms of five and one-half years to life for the one count of Criminal Possession of a Controlled Substance in the Second Degree, five and one-half to sixteen and one-half years for each of the four counts of Criminal Possession of a Controlled Substance in the Third Degree, five and one-half to sixteen and one-half years for the count of Criminal Sale of a Controlled Substance in the Third Degree, and three to nine years for Criminal Possession of a Controlled Substance in the Fourth Degree.

Petitioner appealed the judgment of conviction to the New York State Appellate Divi-

---

**2.** A police laboratory chemist testified that he tested the contents of the four vials and found them to be crack-cocaine. *See* (*Id.* at 221.)

**3.** Specifically, the police found one hundred and twenty-nine one-dollar bills on the employee's person. (*Id.* at 243.)

sion, Second Department (hereinafter "Appellate Division"). On his direct appeal, petitioner raised the same claims that he has brought in the instant petition. Specifically, he argued that the evidence was insufficient to support the jury's finding that he, beyond a reasonable doubt, constructively possessed the four deposits of crack-cocaine found in the bodega. Petitioner also contends that, as a result of the trial court's refusal to deliver a circumstantial evidence charge to the jury, he was denied a fair trial.

On July 27, 1992, the Appellate Division unanimously affirmed petitioner's conviction. *People v. Martinez,* 185 A.D.2d 365, 586 N.Y.S.2d 300 (App.Div.1992). The Appellate Division held that the prosecution had proven beyond a reasonable doubt that petitioner constructively possessed the vials of crack-cocaine found in the bodega and that the jury's verdict was not against the weight of the evidence. *Id.* Additionally, the Appellate Division concluded that no circumstantial evidence charge was necessary because the state had adduced both direct and circumstantial evidence of petitioner's guilt. *Id.* at 366. On October 6, 1992, the New York State Court of Appeals denied petitioner's application for leave to appeal. *People v. Martinez,* 80 N.Y.2d 975, 591 N.Y.S.2d 144, 605 N.E.2d 880 (1992).

The procedural history of this petition having been recounted, the Court now turns to address whether it may reach the merits of petitioner's claims.

### DISCUSSION

#### I. Exhaustion of State Remedies

■ Under 28 U.S.C. § 2254, a federal court may not review the substantive merits of a state prisoner's claims for collateral relief unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b) (1988); *see Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982); *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971). This exhaustion requirement "springs primarily from considerations of comity" and "recognizes that state courts, no less than federal courts, are bound to safeguard the federal rights of state crimi-

nal defendants." *Daye v. Attorney Gen.,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

The Second Circuit Court of Appeals has set forth a two-prong test for determining whether a petitioner seeking federal habeas relief has exhausted his or her state remedies. First, an applicant must have "given the state courts a fair opportunity to pass upon his federal claim." *Daye,* 696 F.2d at 191; *see Gonzalez v. Sullivan,* 934 F.2d 419, 422 (2d Cir.1991) (citations omitted). Specifically, in order to satisfy this requirement, the petitioner must make a minimal showing that he has "informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye,* 696 F.2d at 191 (citing *Picard,* 404 U.S. at 276–77, 92 S.Ct. at 512–13); *see also Levine v. Commissioner of Correctional Services,* 44 F.3d 121, 124 (2d Cir.1995) (noting that a federal issue may be presented to the state courts in any of a number of less than precise ways); *Reid v. Senkowski,* 961 F.2d 374, 376 (2d Cir.1992) (citations omitted).

Second, a petitioner typically must exhaust all available avenues of state appellate review before applying for a writ of habeas corpus in federal court. *See Daye,* 696 F.2d at 190–91. In other words, the petitioner must have "fairly presented" his or her federal constitutional claim to the highest court of the state. *Gatto v. Hoke,* 809 F.Supp. 1030, 1034 (E.D.N.Y.) (citing *Daye,* 696 F.2d at 191), *aff'd,* 986 F.2d 500 (2d Cir.1992).

In the instant case, petitioner, on appeal to both the Appellate Division and the Court of Appeals, explicitly raised the constitutional claims relating to each issue now brought before the Court on *habeas* review. Therefore, the requirement of exhaustion has been satisfied.

#### II. *Analysis of the Merits of the Petitioner's Claims*

#### A. Sufficiency of the Evidence

■ Petitioner contends that the prosecution failed to adduce sufficient evidence to prove beyond a reasonable doubt that he constructively possessed the 287 vials of crack-cocaine that the police recovered from the bodega. In challenging the sufficiency of

the evidence supporting his conviction, petitioner "bears a heavy burden." *United States v. Weiss,* 930 F.2d 185, 191 (2d Cir.), *cert. denied,* 502 U.S. 842, 112 S.Ct. 133, 116 L.Ed.2d 100 (1991). In order to overturn a state conviction on insufficiency grounds, a federal habeas court must find that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 324, 99 S.Ct. 2781, 2789, 2792, 61 L.Ed.2d 560 (1979); *Weiss,* 930 F.2d at 191 (citations omitted). In making this determination, "a federal habeas court is required to consider trial evidence in the light most favorable to the State." *Reddy v. Coombe,* 846 F.2d 866, 869 (2d Cir.), *cert. denied,* 488 U.S. 929, 109 S.Ct. 316, 102 L.Ed.2d 334 (1988); *see also Weiss,* 930 F.2d at 191. "This means that we must credit every inference that could have been drawn in the State's favor, ... whether the evidence being reviewed is direct or circumstantial." *Reddy,* 846 F.2d at 869 (citations omitted).

■ The charges that petitioner challenges all require the prosecution to prove that petitioner "knowingly and unlawfully" possessed 287 vials of crack-cocaine. *See* N.Y.Penal Law §§ 220.09, 220.16, 220.18 (McKinney 1989). Since petitioner did not have these vials in his physical possession at the time of his arrest and had not been seen selling them, the prosecution was obligated to prove that petitioner constructively possessed the vials. Constructive possession under New York law requires a showing that the defendant "exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized." *People v. Manini,* 79 N.Y.2d 561, 573, 584 N.Y.S.2d 282, 594 N.E.2d 563 (1992); *see also* N.Y.Penal Law § 10.00(8) (McKinney 1987); *People v. Whitehead,* 159 A.D.2d 741, 552 N.Y.S.2d 685 (App.Div.1990) (holding that a grocery store clerk exercised sufficient dominion and control to constitute constructive possession of fireworks where the fireworks were next to or in the general proximity of the clerk who was in a plexiglass-enclosed area to which the public did not have access); *People v. Simms,* 175 A.D.2d 144, 572 N.Y.S.2d 34 (App.Div.1991) (where defendant was seen by an undercover officer alone in the precise area from which contraband was recovered and the contraband was located where the public did not have free access); *cf. People v. Pearson,* 75 N.Y.2d 1001, 556 N.E.2d 1076, 557 N.Y.S.2d 269 (1990) (defendant merely being seen coming from a back room of a place open to the public is insufficient to constitute constructive possession of contraband found there).

■ A careful review of the trial record, viewed in a light most favorable to the prosecution, reveals that the evidence was sufficient to support the jury's finding that the petitioner was guilty beyond a reasonable doubt of constructively possessing the 287 vials of crack-cocaine. The prosecution presented direct evidence that petitioner sold four purple-capped vials of crack-cocaine to an undercover officer shortly after selling the same colored vials to two other customers. Although at the time of petitioner's arrest, the second shelf beneath the register contained only vials with gold or black caps, rather than vials with purple caps like those petitioner had sold the undercover officer, this fact in and of itself is insufficient to undermine the jury's verdict. A jury reasonably could have assumed that the purple-capped vials that had initially been on the second shelf had either all been sold or moved. Relevant to the drawing of this inference was police testimony that at the time the police entered the bodega to arrest petitioner, he was leaning below the register counter in the same manner as he had when he had obtained the vials sold to the undercover officer and the two customers. Moreover, approximately 164 of the other vials of crack-cocaine found in the bodega were purple-capped, so that the jury could justifiably have refused to conclude that petitioner's sale of the crack-cocaine had nothing to do with the presence in the bodega of the remaining vials.

Additionally, petitioner's position at the register counter put him in close proximity of the 287 vials of crack-cocaine. The police testified that petitioner was the only one at the counter both at the time the undercover

officer observed him selling drugs and at the time of his arrest. Testimony that the police were able easily to remove the wooden planks on the plywood platform on which petitioner was standing, under which the largest stash of vials was found, could reasonably have caused a jury to deduce that petitioner had, and intended to have, easy access to these vials. Moreover, a jury could have viewed petitioner's testimony that he never gave a straw to anyone purchasing a soda as self-serving, intended only to evade the fact that crack-cocaine vials were found in the straw container.

Additionally, petitioner sold crack-cocaine to the undercover officer and the previous customers without speaking, yet knew exactly how many vials to give each customer in exchange for the amount of money tendered. A rational jury could, therefore, have discredited petitioner's testimony that he knew nothing about selling drugs. Given the large number of small bills on petitioner's person at the time of his arrest, a jury could also have found specious both petitioner's testimony that he had just cashed his unemployment checks and any possible inference that petitioner had only sold crack-cocaine to the undercover officer and the two customers. This evidence also lends credence to the jury's conclusion that petitioner constructively possessed beyond a reasonable doubt the vials of crack-cocaine.

Accordingly, petitioner's claim that the evidence supporting his criminal possession of the vials was insufficient must be denied.

## B. Failure to Deliver Circumstantial Evidence Charge

Petitioner also contends that he was denied a fair trial because of the trial court's refusal to deliver the circumstantial evidence charge that he had requested. Petitioner's challenge, however, relies entirely on New York law and does not implicate any federal constitutional right.

■ Under New York law, if the evidence of a defendant's guilt is exclusively circumstantial, a jury must be so advised and instructed to view the evidence with particular care. *People v. Sanchez*, 61 N.Y.2d 1022, 1024, 463 N.E.2d 1228, 1229, 475 N.Y.S.2d

376, 377 (1989) ("it must appear that the inference of guilt is the only one that can fairly and reasonable be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence"); *People v. Barnes*, 50 N.Y.2d 375, 379–80, 406 N.E.2d 1071, 1073–74, 429 N.Y.S.2d 178, 180 (1980); *see also Taxiarhopoulos v. Spence*, No. 92–0790, 1992 WL 403112, at *8, 1992 U.S.Dist. LEXIS 20110, at *22 (E.D.N.Y. December 28, 1992). A circumstantial evidence charge is not required under New York law when both direct and circumstantial evidence is presented at trial. *Barnes*, 50 N.Y.2d at 379–80, 406 N.E.2d at 1073–74, 429 N.Y.S.2d at 180; *People v. Burgos*, 170 A.D.2d 689, 567 N.Y.S.2d 103, 103–04 (App.Div.1991); *see also Taxiarhopoulos*, No. 92–0790, 1992 WL 403112, at *8, 1992 U.S.Dist. LEXIS 20110, at *23. In this case, the Appellate Division rejected petitioner's challenge to the jury charge, finding the evidence against him to be both direct and circumstantial in nature. *Martinez*, 586 N.Y.S.2d at 300. The Court declines to reassess this question, as "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* (citations omitted).

■ With respect to whether petitioner's federal constitutional rights were violated, the Court notes that the constitutional right to due process does not require a court to give a special jury instructions when a case is founded on circumstantial evidence. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954); *see, e.g., Taxiarhopoulos*, 92–0790, 1992 WL 403112, at *8, 1992 U.S.Dist. LEXIS 20110, at *23. Indeed, the Supreme Court has held that "[c]ircumstantial evidence ... is intrinsically no different from testimonial evidence." *Holland*, 348 U.S. at 140, 75 S.Ct. at 137. Due process "simply requires that before convicting a defendant, the jury must be satisfied on the defendant's guilt beyond a

reasonable doubt from all of the evidence in the case." 1 Leonard B. Sand *et al.,* Modern Federal Jury Instructions P 5.01 (1990) (quoting Instruction 5–2, Direct and Circumstantial Evidence). A review of the jury charge in this case indicates that this point was clearly stated. In addition, the trial court relayed in considerable detail the requirements for finding that petitioner constructively possessed drugs. Thus, the court's charge, taken as a whole, properly instructed the jury on reasonable doubt and on the elements of the crime that had to be proved. *See Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *see, e.g., Trail v. Kelly,* 93–5753, 1994 WL 389059, at *1, 1994 U.S.Dist. LEXIS 10150, at *3 (S.D.N.Y. July 21, 1994).

## CONCLUSION

For the forgoing reasons, petitioner's application for a writ of habeas corpus is denied in its entirety, and the petition is dismissed. The Court finds that the petition presents no question of substance for appellate review, and therefore a certificate of probable cause will not issue. *Rodriquez v. Scully,* 905 F.2d 24, 24 (2d Cir.1990) (per curiam).

SO ORDERED.