■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NICOLE CARTER, Appellant. [948 NYS2d 608]—

The People allege defendant misrepresented her employment status and income when she applied to the New York City Human Resources Administration (HRA) for food stamp benefits, temporary assistance, and medical assistance, indicating on the application that she was unemployed and had no income or resources. The theory of the prosecution was that defendant worked for the United States Postal Service (USPS), and had lied about her income and employment status so she could receive benefits she otherwise would not be entitled to receive. Although the prosecution established that a person named Nicole Carter improperly obtained public assistance benefits, the critical question is whether a circumstantial evidence charge should have been given.

The People introduced time sheets and pay stubs from the USPS for Nicole Carter, as well as an application for welfare benefits that had been completed and recertified by Nicole Carter. Three witnesses testified for the People—a USPS special agent, and two investigators from the fraud department at HRA. The USPS special agent testified that based on his review of the pay stubs and time sheets for August 21, 2006 through the spring of 2009, Nicole Carter was employed full time, with intermittent periods of approved leave. The special agent also testified that from the end of 2006 until October of 2007, Nicole Carter earned a gross biweekly income ranging from $1,234.13 to $2,725.76.

Through the testimony of the two HRA fraud investigators, the People showed that an individual with the same name, birth date, and Social Security number as the USPS employee completed an application for benefits on April 26, 2006. The application recorded that Nicole Carter was unemployed, had no income of any kind, and no "resources." The application also reflected that Nicole Carter could not accept a job at that time due to illness or injury. The first HRA investigator explained that benefits applications need to be periodically recertified to reflect any changes in status, which in turn, could affect the amount of benefits the applicant receives. The initial application is usually completed by hand, and then entered into the

computer system by an HRA employee, whereas the recertifica-
tions are completed and signed electronically. The applicant is
not required to fill out a new form at the time of recertification;
rather, the applicant typically will meet with an HRA employee,
answer a series of questions, and the HRA employee will enter
the recertification information into the computer.

The People introduced two recertifications bearing the same
identifying information as the initial application and the USPS
pay stubs and time sheets. The first recertification took place
on August 7, 2006 and the second recertification was completed
on May 15, 2007. Both recertifications reflected that Nicole Car-
ter was unemployed at the time. The HRA investigator who
testified regarding the application and recertification process
had no knowledge of whether Nicole Carter was actually pre-
sent to recertify her application. However, during the time the
benefits were received, based on the USPS special agent's
testimony, the USPS employee identified as Nicole Carter was
working full time, and, based on the HRA investigator's
testimony, earning an income that did not qualify her to receive
benefits. The second HRA fraud investigator explained that the
HRA fraud division sent a letter to Nicole Carter, requesting
that she come in for an interview, and the investigator identi-
fied defendant as the person who came to the office for the
interview. Defendant did not call any witnesses or testify on her
own behalf.

At the charging conference defendant requested the jury be
given the circumstantial evidence charge; however, the trial
court declined to give the requested charge. Although we find
that the evidence at trial was legally sufficient (*see People v
Bleakley*, 69 NY2d 490 [1987]) and the verdict was not against
the weight of the evidence (*see People v Danielson*, 9 NY3d 342
[2007]), we nevertheless reverse because the trial court should
have given a circumstantial evidence charge.

"Whenever a case relies wholly on circumstantial evidence to
establish all elements of the charge, the jury should be
instructed, in substance, that the evidence must establish guilt
to a moral certainty" (*People v Daddona*, 81 NY2d 990, 992
[1993]). The purpose of the charge is to foreclose the danger
that "the trier of facts may leap logical gaps in the proof offered
and draw unwarranted conclusions based on probabilities of low
degree" (*People v Ford*, 66 NY2d 428, 442 [1985]), because
"[w]hen a case rests entirely upon circumstantial evidence, the
finder of fact is required to perform a complex analytical func-
tion" (*People v Barnes*, 50 NY2d 375, 380 [1980]). Indeed, the
finder of fact is required to piece together a puzzle before it can

even arrive at its determination, and thus, by telling the jury that "the facts perceived as a whole must exclude to a moral certainty every conclusion other than guilt," the law alerts the factfinder to the "rigorous function which must be undertaken" (*People v Barnes*, 50 NY2d at 380 [internal quotation marks omitted]).

Here, the trial court should have given the charge because the People's case rested wholly on circumstantial evidence (*see People v Daddona*, 81 NY2d at 992). Although defendant's name was identical to that of the person who received the welfare benefits, no one identified defendant as the individual who completed the HRA forms, or as the individual who worked for the USPS. The HRA investigator's testimony identifying defendant as the person who appeared at the fraud office was not direct evidence relating to defendant's complicity in the crimes charged because an inference still needed to be drawn that the person who responded to the letter was the same person who falsely applied for benefits (*see People v Lynch*, 309 AD2d 878, 878 [2003], *lv denied* 2 NY3d 742 [2004] [circumstantial evidence charge should have been given where there was "no direct evidence establishing the identity of the burglar" and the evidence of defendant's guilt was wholly circumstantial]). Further, although the investigator stated that defendant showed her photo identification before their meeting, no copy of this identification was introduced, nor could the investigator offer any details. In addition, no testimony was offered to establish that any of the identifying information on this photo identification matched the information in HRA's system or the information on the USPS pay stubs. Indeed, this testimony did nothing to connect defendant with the person who committed the crimes, except by way of a chain of speculative inferences.

Nor were the remaining documents the People submitted direct evidence which eliminated the necessity of a circumstantial evidence charge. The People put forth documents showing that someone named Nicole Carter worked for the USPS and that an individual with the same name, birth date, and Social Security number listed on the USPS pay stubs applied for welfare benefits. Those documents do not constitute direct evidence that defendant was indeed the Nicole Carter listed as a USPS employee, or that defendant was the individual who completed the HRA application. Indeed, the People made no effort to introduce specific evidence that defendant shared any of the pedigree characteristics with the person who improperly obtained government benefits. We do not even know what information, such as defendant's birth date or address, was given to

the police as part of the routine arrest process in this case. Nor did the People seek to introduce tax records or other government documents that would have contained defendant's birth date, Social Security number, or address. Further, although the first HRA investigator testified that the application and recertifications were signed by Nicole Carter, the prosecution did not introduce any expert handwriting testimony or any handwriting exemplars connecting defendant to the signatures on the forms.

Contrary to the People's argument, this case is not one where "both direct and circumstantial evidence are employed to demonstrate a defendant's culpability" thereby negating the need for the charge (*People v Barnes*, 50 NY2d 375, 380 [1980]; *see also People v Roldan*, 88 NY2d 826 [1996]). In cases where the charge was not necessary, there was direct evidence, in the form of eyewitness testimony identifying the defendant as the perpetrator of the crime, or an admission of guilt by the defendant (*see Barnes*, 50 NY2d at 378 [three police officers testified, identifying the defendant as the individual hiding in the store, which had a broken front window, was in disarray, and was missing appliances and electronics]; *People v Roldan*, 211 AD2d 366 [1995] [the two victims testified that they observed the defendant and his accomplice in conversation on the subway, next saw the defendant stand at the top of the subway platform stairs while his accomplice robbed them, and then watched as the individuals fled together]; *People v Guidice*, 83 NY2d 630, 636 [1994] [the defendant's recorded statements that he had sent two men to break the victim's legs constituted an admission of guilt, and thereby was direct evidence, negating the need for a circumstantial evidence charge]). No such direct evidence, either in the form of eyewitness testimony or an admission by defendant, exists here.

In order for the jury to find defendant guilty it had to make a number of logical leaps connecting defendant to the crimes charged. Had the trial court given the circumstantial evidence charge, alerting the jury of the need to exclude to a moral certainty every other reasonable hypothesis of innocence, the verdict may have been different (*see People v Crespo*, 198 AD2d 85 [1993], *lv denied* 82 NY2d 923 [1994]). Further, the circumstantial evidence adduced at trial did not overwhelmingly establish defendant's guilt, "precluding the conclusion that the failure to give the proper charge was harmless error" (*People v Lynch*, 309 AD2d at 878).

We have considered defendant's remaining contentions and find them unavailing. Concur—Mazzarelli, J.P., Friedman, Richter and Abdus-Salaam, JJ.