People v Seignious (2022 NY Slip Op 00948)





People v Seignious


2022 NY Slip Op 00948


Decided on February 10, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 10, 2022

Before: Manzanet-Daniels, J.P., Kapnick, Mazzarelli, Moulton, Scarpulla, JJ. 


Ind No. 4609/16 Appeal No. 14614 Case No. 2019-03581 

[*1]The People of the State of New York, Respondent,
v
Jayquaine Seignious, Defendant-Appellant.


Robert S. Dean, Center for Appellate Litigation, New York (John Vang of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Franklin R. Guenthner of counsel), for respondent.



Judgment, Supreme Court, New York County (Ann E. Scherzer, J.), rendered April 30, 2019, convicting defendant, after a jury trial, of burglary in the second degree, sexual abuse in the first degree, forcible touching (two counts) and sexual abuse in the third degree (two counts), and sentencing him, as a second felony offender, to an aggregate term of 13 years, unanimously modified, on the law, to dismiss the count of burglary in the second degree, and otherwise affirmed.
Defendant's conviction for second-degree burglary was based on events that occurred in the vicinity of New York University on October 30, 2016. At about 11:27 p.m. that night, defendant came up behind two female NYU students and touched them near their buttocks. The two students backed away from him, but he tried to block their paths. As one of the students tried to push past him, defendant threw her against a parked car. When she managed to evade him, the two students ran toward an NYU dormitory, Lipton Hall, and defendant followed them. The students entered the dorm, but defendant did not follow them inside.
Another NYU student witnessed these events while she was walking to Lipton Hall on Washington Square West. As she walked toward the dorm in the middle of the street, defendant started walking parallel to her, and then headed directly toward her. Fearing that he would attack her, the student knocked on the door of a car, asking to be let in, but the driver kept going. Defendant reached the student and grabbed her by the neck, making it difficult for her to breathe, and used his other hand to reach under her dress. Defendant groped her body, including her breasts, buttocks and vagina.
When the first two students had reached Lipton Hall, they told NYU public safety officer Bertram Black, who was stationed in the lobby, that they had been "assaulted by a black male [] wearing dreadlocks in full black." Black heard a loud noise from a side entrance to the dorm, and he opened the turnstiles between the lobby and the elevators, which led to living quarters, and went to check the side entrance. After he returned to the lobby, he heard the third student screaming, and went outside the building entrance where he shouted at defendant to let her go. Defendant answered, "I'm doing me, bro." Black ran back inside and called 911. The student broke free from defendant and ran into Lipton Hall behind Black. The turnstiles were still open and the student walked through and went to a friend's room.
Defendant remained outside where he was seen on surveillance footage pointing at passersby, flailing his arms, following people, and grabbing another female student by the arm. When that student broke free and entered Lipton Hall, defendant followed behind her. In the vestibule he confronted two other students, then continued into the lobby. Black immediately recognized defendant as the man he had seen attacking the third student. Black told defendant to leave. Instead, defendant walked [*2]up to Black, stating, "I'm King Dukta, are you going to protect them from me." He poked Black in the face, and Black shoved defendant backward. Defendant went around the security desk to get close to Black with his arms flailing, as Black pushed defendant back multiple times and told him to leave. Black tried to radio for assistance.
Defendant pointed at some students near the elevators, then walked through the turnstiles, which were still open, toward the students. Black dropped his radio, pursued defendant, grabbed him by the collar and pushed him through the turnstiles into the public part of the lobby. As Black radioed for assistance, defendant walked back toward the entrance and grabbed another female student by the arm. Black held defendant by his collar and his wrists as defendant continued pointing and yelling at students. Three NYU security officers arrived and escorted defendant out of the dorm.
With respect to the events described above, the indictment returned by the grand jury charged defendant with burglary in the second degree as a sexually motivated crime, sexual abuse in the first degree, and criminal obstruction of breathing or blood circulation. At the charge conference, which occurred in the middle of the People's case, the People requested that the court submit second-degree burglary as a lesser included offense of second-degree burglary as a sexually motivated felony. Defense counsel objected on the basis that the People had, up to that point, limited their theory of the crime to one that was motivated by defendant's sexual urges. Thus, counsel argued, the People had failed to put defendant on notice that they would be asking the jury to consider ordinary burglary, and thereby had prejudiced his defense. Counsel further argued that second-degree burglary could not be a lesser included offense of the sexually motivated felony, since the latter was so specific in the intent element that proving it would not establish, at the same time, that defendant had committed the former.
In response, the People argued that their theory remained that defendant committed second-degree burglary as a sexually motivated felony, but that there was a reasonable view of the evidence by which the jury could conclude that he committed a general second-degree burglary. Since they requested the charge, the People argued, the court had no discretion to deny it. In addition, the People asserted that they never committed to the theory that defendant's sole motivation in entering the dorm was to commit a sex crime, even before the grand jury.
The court stated that, pending receipt of additional evidence, it was inclined to charge the jury that it could consider second-degree burglary as a lesser included offense. As to defendant's argument that the People had focused on the sexual element of defendant's actions to the point of excluding the possibility that they would settle for conviction on a lesser burglary charge, the court stated that "I think [*3]we discussed [the lesser charge] in this courtroom during jury selection, or before jury selection, didn't we?" The court further recalled discussing case law on the issue with defense counsel, but stated to the prosecutor [a]lthough it's true that you didn't indicate an intent to request it." The prosecutor agreed with the court that the issue had come up, but defense counsel did not comment.
Pursuant to CPL 300.50(2), upon the request of either party, the court must submit a lesser included offense to the jury as long as: (1) a comparison of the elements of the greater and lesser offense demonstrates that it is impossible to commit the greater offense without at the same time committing the lesser; and (2) there is a reasonable view of the evidence, in the light most favorable to the requesting party, upon which a jury could find that the defendant committed the lesser offense but not the greater (People v Glover, 57 NY2d 61, 64 [1982]; People v Scarborough, 49 NY2d 364, 368 [1980]). Defendant does not dispute on appeal that second-degree burglary is a lesser included offense of second-degree burglary as a sexually motivated offense (see People v Rodriguez, 97 AD3d 246, 252-253 [1st Dept 2012], lv denied 19 NY3d 1028 [2012]).
Defendant does contend, however, that the court improvidently concluded that there was a reasonable view of the evidence upon which the jury could find that defendant committed second-degree burglary, but not as a sexually motivated felony. We disagree. To convict defendant on the lesser count, the jury had to find that defendant knowingly entered or remained unlawfully in the dorm with the intent to commit a crime — any crime - there (Penal Law section 140.25[2]). In this regard, the People are correct in broadening the focus on defendant's behavior in general both outside and inside Lipton Hall. They point to his "generally aggressive conduct," including his yelling at and flailing his arms at passing motorists, and his approaching two students inside the vestibule of the dorm, one of whom was male. The People also note that defendant had a threatening demeanor in his interaction with Black, the security guard, who he poked in the face. In the aggregate, the jury could have come to the rational conclusion that defendant intended to harass and menace people in the building, in a way that was not necessarily for his own sexual gratification.
However, the court improperly charged the lesser-included offense because the People, through the way they presented their case, deprived defendant of notice of the possibility that the jury would be asked to consider a lesser-included. In People v Barnes (50 NY2d 375 [1980]), the Court of Appeals observed that, where the People in a burglary case limit to a particular crime the act that the defendant intended to commit while unlawfully in a building, "the court is obliged to hold the prosecution to this narrower theory alone" (50 NY2d at 379, n 3). This Court relied on that notion [*4]in holding, in People v Rothman (117 AD2d 535 [1st Dept 1986]), that the trial court erred in sua sponte permitting the jury to consider attempted grand larceny as a lesser included of grand larceny, where the People themselves had moved to dismiss the former charge from the indictment. Similarly, in People v Garcia (29 AD3d 255, 262 [1st Dept 2006]), this Court found that the trial court at a bench trial abused its discretion in sua sponte deciding to consider a lesser included charge, even though the People had not sought to have the jury consider that charge.
The People argue that these cases are inapposite, because, unlike in Rothman, they never overtly relinquished the charge that ultimately went to the jury as a lesser included offense, and because, unlike in Garcia, they asked for submission of the lesser included offense, which obligated the court to charge the jury on it, pursuant to CPL section 300.50(2). However, we do not read those cases so narrowly. The overriding principle espoused by Rothman is that "[d]efendants ha[ve] a constitutional right to notice of the charges on which they were to be tried' (117 AD2d at 535). To be sure, Rothman correctly observes that "[o]rdinarily an indictment for a crime gives sufficient notice of any lesser included crimes" (id. at 536; however, it should not make any difference that a defendant was deprived of notice because the People affirmatively abandoned their pursuit of a conviction on a potential offense, as they did in Rothman, or that they so constricted their theory of the case that a defendant would be lulled into defending against that crime only, and not any potential lesser included crimes.
That is exactly what happened here. In opposing defendant's pretrial motion to sever certain charges in the indictment from the others, the People focused exclusively on defendant's sexual harassment of the complainant, and on his grabbing the arm and pulling the shirt of another woman he encountered in the dorm. In making an application for the admission of certain Molineux evidence, the prosecutor focused only on the theory that defendant entered the dorm to satisfy his own sexual urges. And, in his opening statement, the prosecutor stated that defendant "knowingly and unlawfully entered the private area of a dorm to do exactly what he had been doing minutes prior — to grab, to grope and to harass the young women who lived there." Further, the prosecutor downplayed the behavior defendant displayed towards some men he saw in the lobby of the dorm, stating that "the evidence will show that he was substantially motivated by his desire to abuse women when he passed that turnstile and unlawfully entered the private area of the dorm."
The People argue that defendant is being disingenuous because as early as jury selection, if not before, his counsel knew that the People were considering asking for the court to charge the jury on second-degree burglary as a lesser-included offense. However, the only reference [*5]to this is the trial court's noncommittal statement that "I think we discussed it in this courtroom during jury selection." While the People are correct that defense counsel did not disagree with that statement, they also do not point to any minutes, or give any details whatsoever regarding the details of the substance of any such conversation. Moreover, the court, in discussing this exchange it seemed to recall, expressly noted that the People never actually suggested that they intended to seek the lesser included charge. Further, defense counsel's stray comment, when the court was attempting to schedule the charge conference midtrial, that "we were going over some preliminary issues with the sex motivated Burg 2 versus Burg 2" is not probative of when counsel learned that the People were planning on pursuing an alternative theory of guilt. Moreover, counsel's argument during the charge conference that, until that very moment defendant lacked awareness of any theory other than the sex-motivated burglary, more forcefully suggests that the People were only first offering a different theory at that point. Notably, this was after defense counsel had already completed its cross-examination of Black and the complainant who defendant sexually assaulted outside Lipton Hall.
The court correctly denied defendant's motion to suppress the lineup identification made by two witnesses regarding a separate incident, for which defendant was convicted of misdemeanors. There was no substantial likelihood that defendant would be singled out for identification (see People v Chipp, 75 NY2d 327, 336 [1990], cert denied 498 US 833 [1990]). Defendant and the fillers were reasonably similar in appearance, despite differences in their ages, and the police took sufficient steps to ensure that all the participants looked approximately the same despite defendant's distinctive hairstyle and the facial tattoo mentioned in the description of the suspect.
We perceive no basis for reducing the remaining sentence. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 10, 2022