[960 NE2d 405, 936 NYS2d 636]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTIAN BUENO, Appellant.

Argued October 11, 2011; decided November 21, 2011

### POINTS OF COUNSEL

*Appellate Advocates*, New York City (*Denise A. Corsi* and *Lynn W.L. Fahey* of counsel), for appellant. The People failed to establish appellant's guilt of second-degree assault under Penal Law § 120.05 (3) because they failed to show that he caused injury to an emergency medical technician, who had completed his tasks at the scene and would merely return to his post and await the next call for emergency medical services, with the intent to prevent him from performing a lawful duty. (*Jackson v Virginia*, 443 US 307; *People v Campbell*, 72 NY2d 602; *People v McDonald*, 291 AD2d 832; *People v Milhouse*, 246 AD2d 119; *People v Greene*, 221 AD2d 559; *People v Cruz*, 48 NY2d 419; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *People v Versaggi*, 83 NY2d 123; *People v Eulo*, 63 NY2d 341; *People v Shakun*, 251 NY 107.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Rhea A. Grob* and *Leonard Joblove* of counsel), for respondent. The evidence was legally sufficient to support defendant's conviction of second-degree assault, under Penal Law § 120.05 (3), for causing physical injury to an emergency medical service technician with the intent to prevent him from performing a lawful duty. (*People v Ford*, 66 NY2d 428; *People v Contes*, 60 NY2d 620; *People v Steinberg*, 79 NY2d 673; *People v Getch*, 50 NY2d 456; *People v Barnes*, 50 NY2d 375; *People v Castillo*, 47 NY2d 270; *People v Olomonsa*, 71 AD3d 1491; *People v Allah*, 126 AD2d 778; *Matter of Theroux v Reilly*, 1 NY3d 232; *People v Jackson*, 87 NY2d 782.)

### OPINION OF THE COURT

READ, J.

The issue in this appeal is whether the evidence adduced at trial was legally sufficient to establish that defendant Christian

Bueno acted "[w]ith intent to prevent" an emergency medical technician (EMT) "from performing a lawful duty" when he caused an EMT to suffer physical injury (*see* Penal Law § 120.05 [3]). As the uniformed EMT was climbing into the driver's side of an ambulance, defendant blindsided him with a blow to the head, threw him to the ground and pummeled him repeatedly about the face and head. The EMT and his partner on a two-person ambulance crew were about to drive away from the premises where they had just treated an injured woman. We conclude that the People made out a prima facie case of intent by presenting evidence that defendant attacked someone he had reason to know was an EMT on duty at the time.

## I.

At about 2:20 A.M. on the day before Christmas in 2006, EMTs William Spinelli and Linda Aanonsen were dispatched by ambulance to 190 Butler Street in Brooklyn in response to a call for medical assistance for a woman who injured her hand and a man who suffered a bleeding face in a fight. Their work shift was from 12:30 A.M. until 8:30 A.M. that day. Spinelli described the ambulance as a big, white vehicle with the words "Lutheran Medical Center Ambulance" imprinted on it, and Fire Department, 911 and emergency medical services (EMS) stickers on both doors. Spinelli drove the ambulance on this occasion, and activated its lights and siren. Spinelli and Aanonsen were wearing their uniforms—navy pants and a matching pullover displaying their names, the letters "EMT" and their shield numbers, as well as insignia identifying them as EMTs associated with Lutheran Medical Center Emergency Medical Services.

Upon arrival at 190 Butler Street—the address of a small, three-story apartment house—Spinelli parked the ambulance in the street in front of the building. Eight to 10 people were congregating outside the building's entrance. One of them, who identified himself as an off-duty auxiliary police officer, told the EMTs that there was an injured woman inside, and led them to the rear apartment on the first floor. Spinelli and Aanonsen were carrying their equipment—a small collapsible wheelchair called a stair chair; a trauma bag, which is "a larger size bag . . . about 2 feet long," red in color, where supplies such as bandaging, water and ice packs are stored; and a similarly sized

oxygen bag, which contained an oxygen tank and devices used to administer oxygen.

The EMTs observed about 15 people in the apartment, as well as beer cans and coolers, causing Spinelli to conclude that there had been "a party of some sorts." The injured woman complained of pain in her right hand, on which she had placed an ice pack; she told the EMTs that "she had been in a verbal altercation with somebody, and punched a wall with her right hand." The EMTs did not see and were not directed to or approached by anyone bleeding from the face.

Aanonsen gave the woman another ice pack and took her vital signs. The EMTs advised her to go to the hospital for X rays in light of the possibility of a broken hand. Spinelli described the woman as "[p]leasant" and "[f]ine"; she declined to accompany them to the hospital. Since at that point "[t]here was not much more [the EMTs] could do other than what [they] had done already," they left the apartment about 15 minutes after their arrival at 190 Butler Street. On their way back to the ambulance, they again passed by 8 to 10 people standing outside near the building. Someone called out, "Have a safe night. Merry Christmas," and the EMTs responded in kind.

After the EMTs stowed their gear in the ambulance, Spinelli unlocked the passenger side door for Aanonsen, who climbed in. He then walked around to the driver's side and opened the door. But as Spinelli was about to step into the ambulance, he became aware that "somebody [was] screaming out loudly, cursing." He "turned around to see what was going on," and noticed defendant, standing six or seven feet away, "looking in [his] direction, screaming" and moving toward the ambulance. At that point, defendant reared back and threw a beer can at Spinelli's head. Spinelli ducked, and the can flew through the open door into the vehicle, hit the dashboard and "poured alcohol all over," splashing Aanonsen.

Then, as Spinelli attempted to enter the ambulance, having just planted his left foot on the outside step into the cabin, defendant hit him in the back of the head, grabbed his sweater collar and threw him to the ground, where he landed face up. Defendant "kneel[ed] down on one knee[,] right next to" Spinelli and struck his face two or three times with a closed hand. As Spinelli attempted to deflect these blows, the two men rolled on the ground. Spinelli did not throw any punches because he had "always been told, working this job, from the

point [he] was hired, that [EMTs] are not allowed to raise [their] fists, or do anything in any way." Spinelli eventually managed to wriggle free from defendant, but just as he was getting to his feet, a second man struck him from behind on the right side of his head. This blow stupefied Spinelli, causing him to sink down on his hands and knees.

Aanonsen, who hit the emergency button to alert the dispatcher to an urgent situation the minute her partner came under attack, exited the ambulance in time to push the second man off Spinelli. She and that man fell to the ground. He hit her in the face, and she punched back. After another round of punches was exchanged, Aanonsen regained her feet. Bystanders were "trying to break [them] up," and her attacker moved off and stood by a nearby fence where he kept "yelling things. But there was no other physical altercation." Aanonsen then reentered the ambulance, and radioed a request for help before leaving again to assist her partner.

In the meantime, defendant had resumed his attack on Spinelli, "[s]traddl[ing]" him and "punching [him] about the head and face" with "[c]lose-handed fists" more than 15 times. Spinelli was still on his hands and knees, and was "basically trying to crawl away." He described himself as "dazed," and testified further that his head was by this time "really hurting." Defendant eventually broke off the assault, and the two EMTs scrambled into the ambulance. From the safety of their vantage point there, they observed the second man, who was never identified or caught, running down the street away from the ambulance; they saw defendant walk to a nearby building, where he sat down on the stoop.

When police and emergency personnel (two other ambulances and fire department supervisors) arrived one or two minutes later, the two EMTs got out of the ambulance and walked to the front of the vehicle. Spinelli pointed out defendant, who was still lingering nearby, to Officer Eduardo Mercado. As Mercado and his partner approached defendant, Mercado called out, "Come over here." Defendant, who appeared intoxicated to Mercado, ignored this direction and turned to enter the building at 188 Butler Street, but Mercado and his partner intercepted and arrested him. Not until he reached his police vehicle with the handcuffed defendant in tow did Mercado notice bruises on defendant's face and blood on his tee shirt. At the police station, defendant attributed the contusions to a fight earlier in the evening; he twice refused offers of medical assistance.

Spinelli endured swelling to his face and head and a deviated septum as a result of the beating he took; Aanonsen suffered from swelling to her right wrist and knee and bruises to the left side of her face, as well as dizziness, nausea and vomiting on the way to the hospital by ambulance for treatment. Spinelli was also afflicted with dizziness, nausea, vomiting and an uncommonly severe "splitting" headache several hours later in the day, necessitating a return visit to the hospital on Christmas Eve. He did not go back to work for three weeks; Aanonsen was absent from work for 10 days. For his role in this incident, defendant was charged with two counts of second-degree assault (Penal Law § 120.05 [3]) (one count for Spinelli and one for Aanonsen), a felony; and two counts of third-degree assault (Penal Law § 120.00 [1]) (one count for Spinelli and one for Aanonsen), a misdemeanor.

In a brief opening statement, defense counsel told the jury that defendant was "the victim here"—i.e., he was the man with a bleeding face whom the EMTs were dispatched to treat (along with the woman with an injured hand), but they failed in their duty to render him aid and "[i]nstead . . . got him arrested." The People called Spinelli, Aanonsen and Mercado as witnesses, and they testified as already described.

At the close of the People's case, defense counsel moved to dismiss both second-degree assault counts. As relevant to this appeal, she argued that, since the EMTs had "finished at 190 Butler Street, they finished with their call, their duty," the People had not made out a prima facie case that defendant assaulted them with intent to prevent the performance of a lawful duty, as required by Penal Law § 120.05 (3). The prosecutor countered that "the fact that these EMTs were finished with one specific call[ ] is not the way in which the Court should determine whether they were on/or off-duty, or during the performance of their actual duties. These EMTs were in uniform waiting to respond to other calls." In short, just because the EMTs had "finished treating someone [did not suggest that] they were not acting in the performance of their official duties."

While finding "an element of the truth" in both parties' arguments, the trial judge denied the motion. He opined that

> "the fact that the EMTs had finished providing medical care to the patient at that scene, doesn't mean they weren't still performing their lawful duty[;] they were in uniform, and going back into

the ambulance. Part of their lawful duties is to remain on duty for further calls. They still had some paperwork they had to fill out.

"They were loading up their truck, and they were acting in their capacity at that time as EMTs, that's what they were doing. So, I agree with [the prosecutor] about that. I also agree with [defense counsel] that there is an issue as to the intent, as to whether or not the intent was to prevent them from performing their lawful duty.

"I think that's why we have a jury, because I believe that's a question of fact, and I think you can look at these facts and argue it, both cases, and I think it's going to be up to the jury to decide. *That's a question of fact for them whether or not the defendant's actions were with the intent to prevent them from performing their lawful duty. The facts are what they are. I think the inference will be up to the jury to draw what those facts involved.* I am sure that's what [defense counsel is] going to argue to the jury. Therefore, I am not going to grant [the defense] motion to dismiss. I am going to leave the issue of intent up to the jury to decide" (emphasis added).

The defense then rested without calling any witnesses. In her closing argument, defense counsel disputed the People's case on several grounds: that Mercado "did less than thorough police work" because he only spoke to Spinelli and Aanonsen at the scene and did not question any bystanders about what had happened; that, even assuming events unfolded as portrayed by the People's witnesses, there was insufficient evidence that defendant sought to prevent the EMTs from performing a lawful duty because Spinelli and Aanonsen had completed administering aid to the woman with the injured hand and so "the duty was over" before any altercation occurred and, in any event, defendant was too intoxicated to form the requisite intent; that there was insufficient evidence that defendant acted together with the unapprehended stranger, who dealt the heaviest blow to Spinelli and punched Aanonsen; and that Spinelli and Aanonsen did not suffer physical injury within the meaning of the Penal Law (i.e., impairment of physical condition or substantial pain).

As to each victim, the trial judge submitted the charges of second- and third-degree assault under an acting-in-concert theory; he gave an intoxication instruction pursuant to Penal Law

§ 15.25. The jury convicted defendant of second-degree assault and did not return a verdict on the corresponding misdemeanor count with respect to Spinelli;[1] and acquitted defendant of both counts with respect to Aanonsen. The trial judge adjudicated defendant a second violent felony offender, and sentenced him to a five-year prison term plus five years of postrelease supervision.

Upon defendant's appeal, the Appellate Division unanimously affirmed. The court considered the evidence legally sufficient to support the conviction because "there was sufficient circumstantial evidence from which a reasonable jury could infer that the defendant possessed the requisite intent to prevent an emergency medical service technician from performing a lawful duty" (71 AD3d 908 [2d Dept 2010]). A Judge of this Court granted defendant leave to appeal (15 NY3d 772 [2010]), and we now affirm.

## II.

Section 120.05 (3), adopted in 1965 as part of the revised Penal Law, originally provided that a person was guilty of second-degree assault, a class D felony, when "[w]ith intent to prevent a peace officer from performing a lawful duty, he causes physical injury to such peace officer" (L 1965, ch 1030). Through the years, the Legislature has extended the statute's coverage to numerous categories of public servants exposed to a heightened risk of violence because of the fraught circumstances in which they must often perform their job duties.[2] "The rationale [underlying section 120.05 (3)] is to give people who provide public services, during the performance of those services, the protection which may be afforded by the deterrent effect of higher penalties" (Donnino, Practice Commentary, McKinney's

---

1.  The trial judge instructed the jurors not to consider the third-degree count as to a victim unless they first found defendant not guilty of the second-degree crime.

2.  Section 120.05 (3) currently encompasses a peace officer or police officer; "a firefighter, including a firefighter acting as a paramedic or emergency medical technician administering first aid in the course of performance of duty as such firefighter"; an emergency medical service paramedic or technician; "medical or related personnel in a hospital emergency department"; a city marshal, or a traffic enforcement officer or agent; a registered nurse or licensed practical nurse; or a sanitation enforcement agent. Interestingly, the Legislature recently added a new section 120.09 to the Penal Law to create a class C felony of assault on a judge. To be guilty of this crime, a person must intend to cause serious physical injury and to "prevent a judge from performing official judicial duties" (*see* L 2011, ch 148).

Cons Laws of NY, Book 39, Penal Law § 120.00, at 209 [2009]). The Legislature accomplished this by classifying as second-degree assault attacks on certain public servants doing their jobs in a lawful manner where an assailant intended thereby to disrupt their job performance.

The bill that became chapter 262 of the Laws of 1985, which included EMTs within section 120.05 (3), was introduced at the behest of the City of New York. In its memorandum in support, the City justified the bill by pointing out that "[i]n recent months, a number of EMS uniformed personnel have been assaulted, while others have been intentionally prevented or hindered in the performance of their duties"; and that "EMS personnel are sometimes called upon to enter unsafe areas or to deal with tense situations in responding to emergency calls" (*see* Mem of Legis Representative of City of NY, Bill Jacket, L 1985, ch 262, at 5, 1985 McKinney's Session Laws of NY, at 3004). Here, for example, the EMTs were dispatched in the middle of a winter night to a residential address to treat individuals reportedly injured in a fight.

Defendant argues that he could not have violated section 120.05 (3) because "Spinelli and Aanonsen had finished treating a patient who refused to go to the hospital, had packed up their equipment, and were about to leave the scene to await future calls when [he] accosted Spinelli," and "a defendant must intend to prevent an EMT from performing a specific task, not merely to disrupt his passive status of being 'on duty.'" Under his view of the statute, then, the jury apparently would have been entitled to consider whether defendant possessed the intent for second-degree assault if he had struck Spinelli when Spinelli stepped out of the ambulance upon his arrival at 190 Butler Street, or while Spinelli and Aanonsen were treating the woman, or when Spinelli climbed into the ambulance to leave 190 Butler Street so long as the EMTs were transporting the woman to the hospital for treatment, or had been dispatched directly from 190 Butler Street to render medical assistance at another location. But because the EMTs were returning to Lutheran Medical Center without the woman, they were in the "passive status of being 'on duty,'" awaiting such further assignments as might arise during their shift, and could not possibly "perform[ ] a lawful duty" within the meaning of the statute until and unless they were sent out on another call.

We see no reason to read the statute this way. As an initial matter, it is not apparent why the EMTs' response to the request

for medical assistance at 190 Butler Street was "finished" once the EMTs left the apartment without the injured woman rather than when they actually drove away or returned to the hospital. Defendant takes the position that "a defendant must intend to prevent an EMT from performing a specific task," and then defines the task to be more narrow than the facts require. Certainly the jurors might have logically concluded that Spinelli was performing the routine job duties of an EMT in a lawful manner when he attempted to leave premises where he had furnished medical assistance, whether he was then on his way to another call or to his home base at the hospital. The People were not required to prove that defendant intended to injure Spinelli. Even so, the ferocity and persistence of his attack on Spinelli might have reasonably caused the jurors to decide that he intended to interfere with Spinelli's performance of his job duties as an EMT. As the jury heard, Spinelli was, in fact, unable to return to work for three weeks after defendant assaulted him. And the jurors were certainly entitled to disbelieve that defendant was too intoxicated to form an intent to prevent Spinelli from performing a lawful duty.

The standard for reviewing legal sufficiency in a criminal case is whether, "[v]iewing the evidence . . . in a manner most favorable to the prosecution and indulging in all reasonable inferences in the People's favor," a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt (*People v Ford*, 66 NY2d 428, 437 [1985]). A jury is entitled to infer that a defendant intended the natural and probable consequences of his acts (*People v Steinberg*, 79 NY2d 673, 685 [1992]). The element of intent is rarely proved "by an explicit expression of culpability by the perpetrator" (*People v Barnes*, 50 NY2d 375, 381 [1980]); and "[c]ompeting inferences to be drawn [regarding the defendant's intent], if not unreasonable, are within the exclusive domain of the finders of fact, not to be disturbed" by us (*id.*).[3] In light of these principles, the evidence in this case was sufficient for the jury to conclude that

---

3. The dissent, unlike defendant, seems to concede that Spinelli was engaged in a lawful duty at the time of the attack, and argues principally that "the People established only that the victim was subjected to an entirely unexplained, senseless assault at the hands of defendant" (dissenting op at 171). Under this reading of section 120.05 (3), it is hard to see how any case would ever go to the jury unless the defendant "explained" that his intent in attacking an on-the-job public servant was to prevent him from carrying out his job duties.

defendant attacked Spinelli with the intent to prevent an EMT from performing a lawful duty.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN (dissenting). Because I believe that the majority has ignored the plain words of Penal Law § 120.05 (3), I respectfully dissent. Under the majority's view, a person who knowingly assaults an on-duty emergency medical technician (EMT) (or any other type of public servant enumerated in the statute) and causes physical injury is guilty of assault in the second degree pursuant to section 120.05 (3). By contrast, the actual language of the statute provides that a person is guilty of assault in the second degree when "[w]ith intent to prevent . . . [an] emergency medical service technician . . . from performing a lawful duty . . . he or she causes physical injury to such . . . technician."

I believe the majority misses the point in this case in focusing on the victim's activity at the time of the assault (see majority op at 168). The victim's attempt to enter his ambulance may well be a lawful duty within the meaning of the statute. However, the proper focus here should not be on the nature of the victim's activity itself, but on whether defendant had the specific intent to prevent the performance of a lawful duty. In other words, it is not enough to determine whether the victim was engaged in a lawful duty at the time of the assault. The question remains: did the People bring forth legally sufficient evidence that defendant had the requisite intent at the time that he committed the assault?

The evidence here was certainly sufficient to show that the defendant intended to injure the victim—that is, assault in the third degree. As to the second degree count charged, however, I agree with the majority that the People need not prove intent to injure (see majority op at 169). Indeed, "a defendant's intent to injure is *irrelevant* to the crime of assault in the second degree under Penal Law § 120.05 (3)" (*People v Rojas*, 97 NY2d 32, 40 [2001] [emphasis added]).* But the majority errs when it seamlessly moves from stating that the People were not required to show intent to injure to concluding that "[e]ven so, the ferocity and persistence of [defendant's] attack on Spinelli might have

---

* Nor is it sufficient in this case to show intent to cause physical injury while the EMT was "performing an assigned duty" as is the case with assaults on certain transit workers (Penal Law § 120.05 [11]).

reasonably caused the jurors to decide that he intended to interfere with Spinelli's performance of his job duties as an EMT" (majority op at 169). The intent to injure and the extent of the injuries do not suffice to show the intent to prevent the victim from performing a lawful duty required under subdivision (3) of Penal Law § 120.05. The viciousness of the assault does not rationally lead to the conclusion that defendant had the specific requisite intent to interfere with the victim's performance of his lawful duties in his capacity as an EMT.

The majority relies on this Court's opinion in *People v Steinberg* (79 NY2d 673, 685 [1992]) for the proposition that "[a] jury is entitled to infer that a defendant intended the natural and probable consequences of his acts" (majority op at 169), but it is not true that specific intent can be inferred *solely* from an act's result. In *Steinberg*, the jury wrote a note to the court asking, " '[i]f there was no apparent intention to cause injury, but the acts resulted in serious physical injury nonetheless, would that be grounds to conclude intent as spelled out by law?' " (*Steinberg*, 79 NY2d at 684) and this Court held that

> "while a simple negative response would have informed the jury that it could not automatically infer intent to cause the injuries merely because the injuries occurred, such a response might have obscured the jury's right to make a factual finding of intent based on the natural and probable consequences of defendant's acts and the surrounding circumstances" (*id.* at 685).

*Steinberg* does not stand for the proposition that any time a particular result actually occurred, the jury is entitled to infer intent to cause that result. Rather, the jury is charged with looking at the natural and probable consequences *and the surrounding circumstances*. Otherwise, the result in itself would always be sufficient to support a finding of intent.

Here, the People established only that the victim was subjected to an entirely unexplained, senseless assault at the hands of defendant, and that is precisely why the evidence was insufficient to sustain the conviction under Penal Law § 120.05 (3).

As the rule announced by the majority conflicts with the plain meaning of the statute, I dissent and I would reverse the order of the Appellate Division.

Judges CIPARICK, GRAFFEO, PIGOTT and JONES concur with Judge READ; Chief Judge LIPPMAN dissents and votes to reverse in a separate opinion in which Judge SMITH concurs.

Order affirmed.