[16 NE3d 1178, 992 NYS2d 700]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant-Respondent,
v HAZEL E. GORDON, Respondent-Appellant.

Argued April 30, 2014; decided June 12, 2014

**POINTS OF COUNSEL**

*P. David Soares, District Attorney*, Albany (*Steven M. Sharp* of counsel), for appellant-respondent. The People proved defendant's guilt beyond a reasonable doubt. (*People v Danielson*, 9 NY3d 342; *People v Grant*, 17 NY3d 613; *People v Hedgeman*, 70 NY2d 533; *People v Smith*, 79 NY2d 309; *People v Jones*, 300 AD2d 30; *People v White*, 304 AD2d 384; *People v Jones*, 282 AD2d 382; *People v Mackey*, 49 NY2d 274; *People v Steinberg*, 79 NY2d 673; *People v Rodriguez*, 17 NY3d 486.)

*Aaron A. Louridas*, Delmar, for respondent-appellant. Hazel Gordon's convictions must be reversed and the indictment dismissed as the guilty verdicts were not supported by sufficient evidence. (*Jackson v Virginia*, 443 US 307; *People v Contes*, 60 NY2d 620; *People v Santi*, 3 NY3d 234; *People v Williams*, 84 NY2d 925; *People v Danielson*, 9 NY3d 342; *People v Smith*, 79 NY2d 309; *People v Bynum*, 68 AD3d 1348, 14 NY3d 798; *People v Jones*, 4 AD3d 622, 2 NY3d 801; *People v Brandley*, 254 AD2d 185, 92 NY2d 1028; *People v Kellam*, 189 AD2d 1008.)

**OPINION OF THE COURT**

RIVERA, J.

In this appeal, we conclude that the People's failure to recover stolen property from defendant does not forestall their ability to establish that her conscious objective in threatening or using physical force was to prevent or overcome resistance to the taking or retention of that stolen property. We therefore modify the Appellate Division order to reinstate defendant's convictions of robbery in the first and second degrees; and to remit the case to the Appellate Division for consideration of the facts; and, as so modified, affirm.

## I.

Defendant Hazel Gordon was charged with, among other counts, robbery in the first and second degrees (Penal Law §§ 160.15 [3]; 160.10 [1], [2] [a]), and assault in the second degree (Penal Law § 120.05 [2]), stemming from events during a visit by defendant to a department store in a mall outside Albany. Defendant went to the store with her teenage son, her friend and subsequent codefendant Gloria Wheatley, and a toddler. Based on her conduct while in the store, security personnel suspected that defendant stole merchandise, and thereafter followed and stopped the group as they left. Police eventually arrested defendant in the mall parking lot as she attempted to escape, and she and Wheatley were tried together. No merchandise was recovered from defendant or her companions.

At trial, the People presented testimony from Rayon James, a loss prevention officer, who tracked defendant with surveillance cameras, and Michael Lisky, a security guard, who followed defendant throughout the store. James testified that he grew suspicious as he observed defendant and Wheatley browse in the jewelry department. Specifically, he observed defendant select two sets of earrings from a display rack, place one pair

among a pile of clothes she held in her arms, and the second on top of that pile. According to James, the manner in which defendant handled the earrings was "very typical of . . . somebody who is shoplifting." He directed Lisky to follow defendant and Wheatley.

James continued to track defendant and Wheatley with security cameras as they walked from the jewelry to the infant/maternity department, located close to the back of the store. He testified that as defendant walked, she "began removing the jewelry from the backing . . . [and] dropping [the backings] on the floor." James also observed Wheatley remove backings from a third pair of earrings. After the women moved away, Lisky walked to the infant/maternity department and recovered three pairs of backings from the store floor. He then continued to follow defendant and Wheatley.

Defendant made no purchases during the remainder of time she spent in the store. She did, however, make four stops to the layaway counter. Each time, defendant placed at least one item on layaway and left the counter without any merchandise visibly in her possession.[1]

Defendant eventually met her son, and they exited the store with Wheatley and the toddler. James observed their departure on the store cameras and instructed Lisky to follow the group into the mall corridor. James then exited the security booth to assist Lisky.

Before James arrived, Lisky approached defendant and her companions just outside the store. After he identified himself as a store security guard and asked her to return to the store because she had "merchandise that's not paid for," defendant "began yelling and screaming," refused to return to the store, and denied stealing anything. When Lisky stepped in front of defendant, she began "pounding" on his chest with "a closed clenched fist." Lisky then placed his hands on defendant in an attempt to stop her from leaving.

James arrived soon thereafter, entered the fracas, and pushed defendant off of Lisky. He told defendant that they would call the police if she did not return to the store. According to Lisky, defendant then reached "inside her bag and pulled two large pens out and then held them in her hand . . . [and] started

---

1. After defendant's first stop at layaway, Lisky went to the counter where the layaway employee apparently told him that defendant had placed "towels or something" on reserve. No mention was made of the earrings or any jewelry.

swiping at [the guards] trying to stab [them]." James testified that as defendant waved the pens she yelled, "I will kill you, blood clot." The security guards backed off, called the police, and followed from a safe distance as the group walked towards the mall exit.

When they approached the exit, Lisky tried to grab the pens from defendant in an attempt to delay her departure. At that point, according to James, defendant's son came up behind James and pulled out a knife. The son ran out of the mall when James turned to face him, and James chased him through the parking lot and down a bike path between the mall and a neighboring cemetery. According to James, as he ran, the son "put[ ] his hands in his pocket . . . [and] toss[ed] things . . . into the cemetery area." James testified that he thought defendant passed stolen merchandise to her son and that the son tossed this stolen property into the cemetery. After the son's arrest, neither merchandise nor a knife was recovered from him, nor was anything found during a subsequent search of the cemetery.

Lisky followed defendant and Wheatley into the mall parking lot where the women entered a car. He approached the car, opened its door, and unsuccessfully attempted to remove defendant's keys from the ignition. Lisky backed off when defendant tried to swipe him again with the pens, and defendant then "took off" through the parking lot. Undeterred, Lisky took a photo of her license plate, called the police, and followed defendant on foot.

Another store employee, Lance Pappas, testified that he was on a break when he observed the events in the parking lot and went to the car just as Lisky attempted to take the keys from defendant. When defendant pulled away, Pappas ran through the parking lot and stood in front of her car in an attempt to stop her departure. Several witnesses testified that they saw defendant intentionally swerve the car in Pappas's direction and hit him. Pappas fell, injuring his rib cage.

Defendant continued driving until she reached the place where the police were holding her son. She then exited the car and ran towards the officers. After she ignored orders to stop, an officer subdued defendant with a taser, and arrested her and Wheatley.

At the trial, the People submitted extensive video footage which corroborated the live testimony. The footage depicted

defendant and Wheatley in the jewelry department, defendant's suspicious handling of the earrings as described during James's testimony, as well as defendant meandering through the store and making several stops at the layaway department. Additional footage depicted the altercation between defendant and the security personnel directly outside the store's exit.

The jury found defendant guilty of one count of robbery in the first degree, two counts of robbery in the second degree, and one count of assault in the second degree.[2] The court sentenced defendant to an aggregate term of five years' imprisonment followed by five years' postrelease supervision.

On appeal, defendant challenged her convictions as based upon legally insufficient evidence. On the robbery counts, she alleged that because the earrings were not recovered from her or her companions, the jury could not reasonably infer that she threatened or used force to retain possession of that property. With respect to the assault count, she claimed the People failed to establish that it was her conscious objective to cause physical injury to Pappas.

The Appellate Division modified the Supreme Court judgment by reducing defendant's robbery convictions to petit larceny; remitted the matter to Supreme Court for resentencing; and, as so modified, affirmed (*see People v Gordon*, 101 AD3d 1158 [3d Dept 2012]). The court concluded there was insufficient evidence to support the robbery convictions as "no stolen property was found in the possession of defendant or either of her accomplices" and, thus, the jury could not reasonably infer that she threatened or used force to prevent or overcome resistance to the taking or retention of such property (101 AD3d at 1159). However, the court concluded that there was sufficient evidence to support the lesser included offense of petit larceny because the "evidence establishe[d] that defendant, while still in the store, removed and discarded the cardboard backing from several pairs of earrings" (*id.* at 1160). The court rejected defendant's legal sufficiency challenge to her assault conviction (*see id.*), and concluded her remaining contentions were either unpreserved or lacked merit (*see id.* at 1160-1161).

A Judge of this Court granted the People and defendant leave to appeal (*see* 21 NY3d 912 [2013]). We now modify the Appellate Division order by reinstating defendant's convictions for robbery in the first and second degrees.

---

2. The jury convicted Wheatley of petit larceny.

## II.

It is well established that "[a] verdict is legally sufficient if there is any valid line of reasoning and permissible inferences that could lead a rational person to conclude that every element of the charged crime has been proven beyond a reasonable doubt" (*People v Delamota*, 18 NY3d 107, 113 [2011]; *see Jackson v Virginia*, 443 US 307, 319 [1979]; *People v Danielson*, 9 NY3d 342, 349 [2007]). In considering the evidence we view it "in the light most favorable to the prosecution," and recognize that "the People are entitled to all reasonable evidentiary inferences" (*Delamota*, 18 NY3d at 113; *see Danielson*, 9 NY3d at 349; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Further, "[w]e must assume that the jury credited the People's witnesses and gave the prosecution's evidence the full weight it might reasonably be accorded" (*People v Hampton*, 21 NY3d 277, 288 [2013]). Hence, in a sufficiency review, we "marshal competent facts most favorable to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained its burden of proof" (*Danielson*, 9 NY3d at 349; *see People v Cintron*, 95 NY2d 329, 332 [2000]). Applying these standards, we conclude that there is sufficient evidence to support the jury's inference that defendant remained in possession of stolen merchandise at the time she threatened or used force and, therefore, we reinstate her convictions for robbery in the first and second degrees.

A person is guilty of robbery in the first degree when such person "forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, [such person] or another participant in the crime . . . [u]ses or threatens the immediate use of a dangerous instrument" (Penal Law § 160.15 [3]). Similarly, a person is guilty of robbery in the second degree when such person "forcibly steals property and when" the individual "is aided by another person actually present," or "[i]n the course of the commission of the crime or of immediate flight therefrom, [such person] or another participant in the crime," also "[c]auses physical injury to any person who is not a participant in the crime" (Penal Law § 160.10 [1], [2] [a]).

Thus, robbery in the first and second degrees both require the prosecution to prove that a defendant "forcibly [stole] property." A person commits "forcible stealing" when, during the

commission of a larceny,[3] such individual "uses or threatens the immediate use of physical force upon another person for the purpose of . . . [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking" (Penal Law § 160.00 [1]).

"The applicable culpability standard—intent—require[s] evidence that, in using or threatening physical force, [the] defendant's 'conscious objective' was either to compel [the] victim to deliver up property or to prevent or overcome resistance to the taking" or retention thereof (*People v Smith*, 79 NY2d 309, 315 [1992], quoting Penal Law §§ 15.05 [1]; 160.00 [1], [2]). Intent may be established by the defendant's conduct and the circumstances (*see People v Mackey*, 49 NY2d 274, 279 [1980], citing *McCourt v People*, 64 NY 583, 586 [1876]; *People v Oliver*, 4 AD2d 28, 31 [3d Dept 1957], *affd* 3 NY2d 684 [1958]; *see also People v Barnes*, 50 NY2d 375, 381 [1980]; *People v Romero*, 101 AD3d 560, 560 [1st Dept 2012], *lv denied* 20 NY3d 1103 [2013] [the "(d)efendant's criminal intent could be readily inferred from the surrounding circumstances"]). "The element of intent is rarely proved by an explicit expression of culpability by the perpetrator; and competing inferences to be drawn regarding the defendant's intent, if not unreasonable, are the exclusive domain of the finders of fact, not to be disturbed by us" (*People v Bueno*, 18 NY3d 160, 169 [2011] [internal quotation marks, brackets and citations omitted]).

Force used solely to effectuate a defendant's escape will not support a robbery conviction (*see e.g. People v Bynum*, 68 AD3d 1348, 1349 [3d Dept 2009], *lv denied* 14 NY3d 798 [2010]). However, when a defendant is later found in possession of stolen property, the jury may infer that his or her use of force was to retain control of that property (*see Bynum*, 68 AD3d at 1349; *People v Jones*, 4 AD3d 622, 623-624 [3d Dept 2004], *lv denied* 2 NY3d 801 [2004]; *People v Brandley*, 254 AD2d 185 [1st Dept 1998], *lv denied* 92 NY2d 1028 [1998]).

Some Appellate Division departments have adopted what amounts to an inverse proposition, that failure to recover stolen property from a defendant precludes a jury's finding of guilt for first or second degree robbery, notwithstanding the possible inferences which might reasonably follow from the trial evidence.

---

**3.** Pursuant to Penal Law § 155.05 (1), "[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to [such person] or to a third person, [such person] wrongfully takes, obtains or withholds such property from an owner thereof."

Those courts have held that, absent subsequent recovery of stolen property from the defendant, "it is impossible to conclude beyond a reasonable doubt that [the] defendant's conscious objective in threatening to use physical force was to prevent or overcome resistance to the retention of the property" (*People v Kellam*, 189 AD2d 1008, 1010 [3d Dept 1993]; *see People v Miller*, 217 AD2d 970, 971 [4th Dept 1995]; *People v Nixon*, 156 AD2d 144, 146 [1st Dept 1989], *appeal dismissed* 76 NY2d 870 [1990]). We reject this premise because it deprives the jury of its traditional role as factfinder and would have the unintended consequence of removing certain criminal conduct from the statutory ambit.

Whether a defendant had the intent to forcibly steal property is a question for the trier of fact, a question which may be answered based on direct evidence of such intent, or upon reasonable inferences drawn from the trial evidence (*see People v Bueno*, 18 NY3d 160, 169 [2011]; *People v Barnes*, 50 NY2d 375, 381 [1980]). There is nothing inherently unique or qualitatively different in first and second degree robbery cases to support removing from the jury's recognized province the task of determining defendant's intent.

Certainly, recovery from the defendant of the stolen property provides a strong basis for a jury's finding of criminal intent (*see e.g. Bynum*, 68 AD3d at 1349; *Jones*, 4 AD3d at 623-624; *Brandley*, 254 AD2d at 185). Yet, just as possession of the property is but one fact which supports the jury's reasonable inference of the defendant's "conscious objective," failure to recover the property from the defendant is also a fact for the jury to consider in determining whether the People have established the requisite intent. Where sufficient facts and reasonable inferences support a finding of intent to forcibly steal, even where the stolen property is not recovered from the defendant, a jury should be permitted to make such a finding.

A requirement that the People establish possession would permit a defendant to escape prosecution where the defendant disposed of the stolen property prior to arrest. In certain cases, moreover, recovery may be next to impossible given the characteristics of the property and the circumstances surrounding the robbery. The present case is but one example of the difficulties of prosecution where the property is small, easily disposed of, and difficult to find. This is particularly true where, as here, the crime scene encompasses a large and public area. We see no basis for interpreting the law in a way that rewards criminal conduct, or places an insurmountable burden on the People.

Thus, the question on defendant's appeal is not whether the earrings were found on her person, but whether there was sufficient evidence to support the jury's conclusion that she used force "for the purpose of . . . [p]reventing or overcoming resistance to the taking of [the earrings] or to the retention thereof immediately after the taking" (Penal Law § 160.00 [1]). Here, James testified that he observed defendant acting in a suspicious manner as she handled several sets of earrings in the jewelry department. Specifically, she placed pairs of earrings among and on top of a pile of clothes in her arms, thus secreting them on her person. He thereafter observed her in another section of the store removing the backings from the earrings. James's observations were corroborated by Lisky's testimony that he recovered the backings from the floor of the infant/maternity department. Moreover, the jury could reasonably have accepted James's and Lisky's testimony based on the jurors' independent observations of the surveillance video (see People v Morris, 21 NY3d 588, 597-598 [2013]; People v Negron, 91 NY2d 788, 792 [1998] [noting "our long-standing recognition that a jury is entitled to assess the credibility of witnesses and determine, for itself, what portion of their testimony to accept and the weight such testimony should be given"]).

Defendant's conduct at the store exit and in the parking lot further support the jury's determination of her guilt. When Lisky and James approached defendant, she acted in a violent and threatening manner that was disproportionately aggressive under the circumstances. This extreme reaction provided an additional basis upon which the jury could infer that defendant's actions were intended to ensure her retention of the stolen property.

Contrary to defendant's argument, the fact that the earrings were not recovered from her or her companions does not make the inference unreasonable or render the evidence legally insufficient. As we have made clear, the jury could have taken into consideration the failure to recover the earrings and still have found the evidence sufficiently persuasive to find intent. The jury's conclusion is reasonable given defendant's conduct inside and outside the store.[4]

---

4. Our dissenting colleague concludes that the evidence is insufficient to satisfy the immediacy requirement of the robbery statute because too much time elapsed between the taking of the earrings and the altercation. Whether

Based on this record, we conclude there was ample evidence to support a reasonable inference—from defendant's suspicious conduct in the store, removal of the backings from two pairs of earrings, and extreme reaction to the security guards after leaving the store—that defendant stole merchandise and threatened or used force to prevent or overcome resistance to her possession of that property. Thus, the jury's verdict with regard to the robbery convictions is legally sufficient.

With respect to defendant's cross appeal of her conviction for second degree assault, we conclude that her challenge on sufficiency grounds is without merit. The testimony from the victim and several eyewitnesses that defendant swerved into Pappas, and his testimony as to the physical injuries he incurred were more than enough to sustain the jury's guilty verdict.

Accordingly, the Appellate Division order should be modified by reinstating defendant's convictions of robbery in the first and second degrees; and remitting the case to the Appellate Division for consideration of the facts (*see* CPL 470.25 [2] [d]; 470.40 [2] [b]); and, as so modified, affirmed.

Chief Judge LIPPMAN (dissenting in part). A defendant not found in possession of stolen property may be convicted of robbery on a theory of forcible retention, but only upon proof, direct or circumstantial, to justify the inference that, at the time of her resort to force, she retained what she stole. Proof of actual possession contemporaneous with the use of force to perfect the

---

defendant used force immediately after the taking is a question for the jury (*see People v Carrel*, 99 NY2d 546, 547 [2002]; *People v Dekle*, 83 AD2d 522, 522 [1st Dept 1981], *affd on other grounds* 56 NY2d 835 [1982] [lack of preservation]); and we disagree that, in this case as a matter of law, "a substantial interval" passed, thus foreclosing an inference of forcible stealing (*see e.g. People v Johnstone*, 131 AD2d 782, 782-783 [2d Dept 1987]; *Dekle*, 83 AD2d at 522 ["The jury was entitled to find that defendant's taking of the property was a continuous act, including removal of the item from the showcase, the removal of its price tags in the adjacent department and its removal from the store, and that defendant's threat to use the knife was a threat of 'the immediate use of force' so shortly after the taking as to constitute the use of physical force 'immediately after the taking' to overcome the victim's resistance to the defendant's retention of the property"]). The dissent's argument that the inferences of defendant's possession are speculative is belied by the record, which contained evidence that she surreptitiously took the earrings, removed their backings, and, when confronted as she exited with her companions, reacted violently by threatening security guards. Certainly, as the dissent concedes, the jury could have also inferred that defendant passed the earrings to one of her companions who then, after the altercation, disposed of them. Based on either inference, however, defendant's robbery convictions are legally sufficient.

taking is not, as the majority suggests (majority op at 651), dispensable to a robbery conviction.

The Appellate Division may have spoken with less than optimal precision when it said in substance that because defendant was not apprehended in possession of the stolen property she could not be convicted of robbery on a forcible retention theory.[1] But the court was not wrong in concluding that the evidence, even when viewed in the light most favorable to the People, did not prove what it had to: that defendant did, in fact, retain the purloined earrings when she struck out at and threatened the store employees.

The People urge that the jury could reasonably have inferred from defendant's taking of the earrings that she possessed them until and during her confrontation with the store employees. But, although there was evidence that she stole the earrings, there was none that she still had them at the time of the altercation. That latter event was removed by at least half an hour from the taking, and there is no evidence as to the disposition of the earrings in the meantime. Defendant could easily have transferred them to someone else (her son or shopping partner and codefendant are obvious candidates) or might have left them, purposely or otherwise, at the layaway counter during one of her several video-recorded trips there. What is certain is that she did not possess the earrings shortly after the altercation, and there was no evidence to substantiate the explanatory hypothesis that she got rid of them following the altercation but before her arrest—a period during which she was apparently constantly pursued and observed by the store employees.

It is presumably to avoid elevating petit larceny to robbery on the basis of a purely speculative connection between the taking and a subsequent use of force that the robbery statute repeatedly requires the use of force to coincide with or follow

---

1. The decision says,
   "[w]here a defendant *is found to be in possession* of stolen property, a jury may infer that he or she threatened or used force to prevent or overcome resistance to its taking or retention; however, *when such evidence is lacking*, it is impossible to conclude beyond a reasonable doubt that defendant's conscious objective in threatening to use physical force was to prevent or overcome resistance to the retention of the property" (*People v Gordon*, 101 AD3d 1158, 1159 [2012] [emphasis added; internal quotation marks and citations omitted]).

immediately upon the taking.[2] Where the immediacy requirement is scrupulously met, the necessary inference that the force was used to consolidate the taking is one that often may be naturally drawn from the close temporal relation between the taking and the thief's resort to force. On the other hand, to permit a robbery conviction where there is a substantial interval between the theft and the use of force, and where there is no evidence, except the taking, to sustain the inference of continued possession, countenances the fracture of what is supposed to be a unified course of felonious conduct into a disjunct sequence composed of a taking and a subsequent use of force, and in so doing effectively relieves the People of proving, as we have held they must, that force was used "for the purpose of"—i.e., with the conscious objective of—completing the theft (see *People v Smith*, 79 NY2d 309, 311-312 [1992]).

The majority suggests that unless the People are relieved of the statutory requirement of proving that force was used for the purpose of retaining stolen property, criminal conduct will be rewarded in contravention of public policy (majority op at 651). All that is properly involved, however, is the measuring of the statutory criteria for robbery against the conduct proved. Moreover, there is no social or penal justification for treating as a class B or C felony what is, without the benefit of considerable imaginative embellishment, a petit larceny followed at some temporal remove by an assault.

In reducing the robbery convictions, the Appellate Division, I believe, correctly conformed the judgment to the proof. I would affirm the appealed order in its entirety.

Judges GRAFFEO, READ, SMITH and PIGOTT concur with Judge RIVERA; Chief Judge LIPPMAN dissents in part in an opinion in which Judge ABDUS-SALAAM concurs.

Order modified by reinstating defendant's conviction of robbery in the first and second degrees and remitting the case to the Appellate Division, Third Department, for consideration of the facts (CPL 470.25 [2] [d]; 470.40 [2] [b]) and, as so modified, affirmed.

---

**2.** Robbery is defined as forcible stealing, which, as is here relevant, is in turn defined as the "use[ ] or threaten[ed] . . . *immediate* use of physical force upon another person *for the purpose of* . . . [p]reventing or overcoming resistance to the taking of the property or to the retention thereof *immediately* after the taking" (Penal Law § 160.00 [1] [emphasis added]).