People v Nemcow (2021 NY Slip Op 21272)

People v Nemcow

2021 NY Slip Op 21272 [73 Misc 3d 28]

Accepted for Miscellaneous Reports Publication

Supreme Court, Appellate Term, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, December 8, 2021

[*1]

The People of the State of New York, Respondent,
v
Julius Nemcow, Appellant.

Supreme Court, Appellate Term, First Department, October 12, 2021

APPEARANCES OF COUNSEL

Center for Appellate Litigation (Benjamin Rutkin-Becker of counsel) for appellant.
Cyrus R. Vance, Jr., District Attorney (Franklin R. Guenthner of counsel), for respondent.

{**73 Misc 3d at 29} OPINION OF THE COURT

Per Curiam.

Judgment of conviction (Anne J. Swern, J., on motion to dismiss; Herbert J. Moses, J., at trial and sentencing), rendered April 15, 2019, affirmed.
Penal Law § 120.45 (3) provides that a person is guilty of stalking in the fourth degree when he or she
"intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct . . .
"is likely to cause such person to reasonably fear that his or her employment, business or career is threatened, where such conduct consists of appearing, telephoning or initiating communication or contact at such person's place of employment or business, and the actor was previously clearly informed to cease that conduct."
In enacting this statute,
"the New York Legislature set up a standard of intent that does not require that the stalker have a specific intent to stalk, but rather that the stalker [for no legitimate purpose] intentionally engages in a course of conduct, which s/he knew or reasonably{**73 Misc 3d at 30} should have known . . . is likely to cause such person to reasonably fear that his or her employment is threatened, where such conduct consists of appearing, telephoning or initiating communication or contact at such person's place of employment or business, and the actor was previously clearly informed to cease that conduct.
"This last, particularly bold, initiative was to provide within the statute recourse for victims who suffer employment, [*2]business or career consequences or reasonable fear in that regard, emanating from the conduct of the stalker" (Demetra M. Pappas, Stopping New Yorkers' Stalkers: An Anti-Stalking Law for the Millennium, 27 Fordham Urb LJ 945, 949-950 [2000] [internal quotation marks and citations omitted]).
Viewing the evidence in the light most favorable to the prosecution and giving them the benefit of every reasonable inference (see People v Gordon, 23 NY3d 643, 649 [2014]), defendant's guilt of fourth-degree stalking was proved beyond a reasonable doubt. The evidence presented by the People established every element of the offense. Complainant, an employee at the New York City Administration for Children's Services (ACS), Office of Advocacy, was a parent advocate on defendant's behalf with respect to a then-open ACS case concerning defendant's daughter. After complainant declined defendant's request to go on a date, defendant sent a barrage of messages by email and voicemail to complainant and her supervisors, falsely claiming that he was in an "intimate relationship" with complainant and that complainant was dating ACS constituents, and referring to complainant's immediate supervisor as a "bitch." Defendant also forwarded compromising and embarrassing online photos of complainant taken 10 years earlier when she was a teenager. Defendant continued this conduct even after he was notified in an email dated December 15, 2017, that he should "desist" from any further contact, that the Office of Advocacy's work was "officially concluded," and that police had been notified. Following that notification, defendant sent emails to a supervisor claiming that complainant "smoked weed, w[ore] gang attire, strip[ped] naked in social media posts," had "sex with [a] client," and defendant threatened to "take these photos of her to the media." Given the nature, content and volume of the emails, the court could rationally infer that defendant, intentionally and for no{**73 Misc 3d at 31} legitimate purpose, engaged in a course of conduct directed at complainant that was likely to cause her reasonable fear that her employment or career was threatened, and that defendant was previously clearly informed to cease that conduct (see People v Stuart, 100 NY2d 412, 428 [2003]; People v Angel, 37 Misc 3d 127[A], 2012 NY Slip Op 51882[U] [App Term, 1st Dept 2012]).
Nor was the verdict against the weight of the evidence (see People v Danielson, 9 NY3d 342 [2007]). There is no basis for disturbing the court's determination concerning credibility, including its rejection of defendant's testimony.
Defendant's present challenges to the sufficiency of the accusatory instrument are similarly lacking in merit. The misdemeanor complaint and supporting depositions charged all the elements of the offense, and set forth sufficient factual allegations to warrant the conclusion that defendant engaged in a course of conduct that was reasonably likely to cause reasonable fear to complainant that her employment was threatened (see Penal Law § 120.45 [3]).
The court properly exercised its discretion (see generally People v Foy, 32 NY2d 473 [1973]) in refusing to admit confidential evidence related to the underlying ACS case (see People v Fields, 160 AD3d 1116, 1120 [2018], lv denied 31 NY3d 1116, 1120 [2018]) since it was "only marginally relevant [and] pose[d] an undue risk of confusion of the issues" (People v Jack, 149 AD3d 779, 780 [2017], lv denied 29 NY3d 1081, 1088 [2017]). Defendant's argument that the court's ruling violated his constitutional right to present a defense, to the extent preserved for appellate review, has been considered and found to be unpersuasive.
Edmead, P.J., Brigantti and Hagler, JJ., concur.